Tilghmaít O. J.
This is an insurance on goods on board the ship Herkimer at and from London to New York. In the course of the voyage, the ship being in distress, part of the plaintiffs’ goods, to the amount of more than one half, were thrown overboard for the preservation of the remainder °^' *^e carg°5 an(l of the lives of the crew. Of the residue of the plaintiffs’ goods, part was found to be in a good condition on the arrival of the ship at New York, and part damaged, but not to the amount of five per cent., in which case, by the terms of the policy, the underwriters are not liable. On the adjustment of the general average, the loss was about 36J per cent. The plaintiffs abandoned, and claimed for a total loss, and the question is whether they are entitled to recover for a total loss.
There is no doubt but a loss occasioned by jettison, is within the words and meaning of the policy. But what is the loss? The plaintiffs answer the whole amount of the goods thrown over. The defendants say, no; the real loss is, that part of the value of the goods thrown over, which is not restored to the plaintiffs by a contribution from those persons whose property was saved by the jettison. The argument on the part of the plaintiffs is, that as the loss has happened by one of the perils insured against, they have a a right to look immediately to the defendants, who after having paid the whole loss, may place themselves in their situation, and recover the contribution to which they were entitled. I am not satisfied with this course of proceeding, which seems i’ather to invert the natural order of things. The defendants are undoubtedly answerable for the loss occasioned by the jettison, and it is equally clear that the plaintiffs have a right to receive contribution from the other persons whose property was saved. If the value of the plaintiffs’ goods is one hundred dollars, and they receive seventy dollars by way of contribution, the loss is only thirty dol *465 lars. It seems reasonable, that he who is entitled to receive the contribution, should in the first instance apply for it. If it should be lost, without any fault of his, the underwriter is answerable. It does not appear that the plaintiffs ever applied to the persons hound to contribute, or that there was the least difficulty in procuring payment from them. One cannot help asking then, why the plaintiffs should so pertinaciously insist on resorting to the defendants in the first instance. If indemnification for their loss is the object, what is the difference whether they receive it from the defendants or other persons? I can find no satisfactory answer to this question, but by supposing *that bare indemnification will not satisfy the plaintiffs. Their object must be to make gain by abandoning-to the defend*ants, and thus producing a constructive total loss, whereby the defendants will be involved in the state of the market at New York. I am not disposed to assist them in this attempt, unless it can be clearly shown, that they have the law in their favor. Let us see then how the authorities stand on this subject. Ve have the decided opinion of Roccus, that the insurers are not to be resorted to in the first instance. This opinion is cited and asserted to be the law by Park and Marshall, the two best of the English elementary writers. It would seem to be Pothierls opinion, that if the contribution is not paid at the end of the voyage, whatever may have been the cause of non-payment, the underwriter is liable for the whole value of the jettison. Marshall having mentioned this opinion, makes the following remark. “ I cannot approve of this practice, as it permits an abandonment in a case where there can only be a partial loss.” It is not always easy to determine, whether the opinions of the French authors is founded on principles of general law, or on their own law, particularly the ordinances of Lewis the fourteenth. If this case however were to be decided by those ordinances, the plaintiffs would gain nothing by it; for Valin, vol. 2, p. 101, lays it down that the insured cannot abandon, where part of his goods is lost by jettison, and part preserved without any damage. The counsel for the plaintiffs have cited and relied upon the cases of Amory and Co. v. Jones, 6 Mass. Rep. 318, and Magrath v. Church, 1 Caines New York Term Rep. 196. In the first of those cases, it does not appear that this point was brought distinctly before the court. There was a general average of small amount. Chief Justice Parsons says, “the plaintiffs may recover this small average loss,”—the reporter adds, *466 “ after this opinion was given, the general average was compromised by the parties.” I cannot perceive that a question was made in that case, whether thé plaintiff was entitled to recover the whole amount of the jettison from the defendants. It is not touched either by the counsel or the court. The case of Magrath v. Church is to the point, and I should have been glad if I could have seen clear reason for agreeing with if- I am *sensible of the convenience of uniformity of decision in the United States, and no man has a higher respect than myself, for Chief Justice Kent, and the Supreme Court of New York. But it does appear to me, that a departure from the ancient rule may be attended with inconveniences greater than those which will result from an adherence to it. I observe that Chief Justiee Kent grounds his opinion in part on the English practice, for which he cites Abbot 296. With great deference, I rather think that according to Abbot, it is not the practice to apply to the insurer’s of the goods lost by the jettison, for the whole amount of that loss, but that the custom is, for the different underwriters on the goods subject to the average, to pay the amount of the respective contributions. His expressions are these, “ it is usual for the broker who has procured the policy of insurance, to draw up an adjustment of the average, which is commonly paid in the first instance by the insurers without dispute. In case of dispute, the contribution may be recovered either by a suit in equity, or an action at law, instituted by each individual entitled to receive, against each party that ought to pay, for the amount of his share.” If my construction of Abbott is right, the practice in England is, according to the law as laid down by Roccus, Park and Marshall; that is to say, the first resort is had to the persons liable to contribution, or what is the same thing, to their insurers.
It is unnecessary to decide, what steps are to be taken by the assured to recover the contribution before the underwriters shall be liable for the whole loss, or whether on refusal to pay the contribution, the demand against the underwriters is to be suspended, until the end of the suits brought for the recovery of it. It is sufficient for the present to say, that there should be a demand made from the persons bound to contribute, and some reasonable endeavor to procure payment, and that the insured has not a right in the first instance to make an election, whereby a loss partial in its nature, is by construction rendered total.
.1 give no opinion on some other points ingeniously sug *467 gested by the counsel for the defendants, and well worthy of serious consideration.
Judgment for the defendant.
[The other judges concurred for the reason assigned by the Chief Justice.]