GRISWOLD (RIDGWAY TP. v.). See Case No. 11,819.

---

## Case No. 5,840.

GRISWOLD et al. v. UNION MUT. INS. CO.

[3 Blatchf. 231.][1]

Circuit Court, S. D. New York. Nov. 24, 1854.

INSURANCE—VALUED POLICY — LEX LOCI — OPEN POLICY—GENERAL AVERAGE.

1. The general rule of commercial law is that, as between insurers and insured, a valued policy is to be taken as settling the true value of the subject insured, unless the valuation is shown to be fraudulent or enormously excessive.

2. It is not an ingredient of the contract of insurance that it shall be enforced conformably to the law of the place where it was executed.

3. The case of Lapsley v. United States Ins. Co.. 4 Bin. 502, had reference only to an open policy.

4. Where the owner of a vessel was insured on its freight under a valued policy, and there was a jettison of a portion of the cargo, so that the freight on that portion was lost: Held, in an action on the policy, that the amount of the recovery was to be computed on the basis of the valuation in the policy, and that the liability of the insurer was not limited by the amount contributed by the insured on a general average adjustment.

[Cited in The Fern Holme, 46 Fed. 120.]

[Cited in Boardman v. Boston Marine Ins. Co., 146 Mass. 453, 16 N. E. 34; Lockwood v. Sangamo Ins. Co., 46 Mo. 77.]

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

This was an action of assumpsit upon a policy of insurance effected, in February, 1848, by the plaintiffs [Nathaniel L. Griswold and others] with the defendants [The Union Mutual Insurance Company of Philadelphia], who were a Pennsylvania corporation. The policy was executed at Philadelphia. The insurance was for $5,000, upon freight on board the ship Helena, on a voyage from New York to Canton, and back to the United States, with liberty to use any northern port in China. Among the perils insured against were jettisons. The defendants pleaded the general issue and payment. The action was tried in October term, 1853. The following facts appeared: In July, 1848, the Helena left Shanghai, a northern port in China, for New York, with a cargo of goods on freight. The plaintiffs were the owners of the ship and of most of the cargo. She met with various disasters, which made it necessary to throw overboard portions of the cargo. The plaintiffs claimed that the defendants were liable, under the policy, for one-sixth of the loss of freight. The declaration averred such loss to be $12,000, and claimed $2,000 from the defendants. The actual freight for the voyage, on the whole cargo, according to the rate specified in the bills of lading, and which were the current market rates at Shanghai, at the time of shipment, amounted to $12,-795 81. The actual freight on that part of the cargo which was jettisoned, amounted to $4,949 95; and the freight on the residue of the cargo, which arrived at New York, amounted to $7,845 36. After the arrival of the ship in New York, a statement of the general average of the cargo jettisoned, and of the freight thereon, was prepared, in which the owners of the ship were allowed $4,949 95 for freight on the jettisoned cargo, in contribution, and the contributory sum assessed upon the freight was $1,657 92. That part of the cargo which was not jettisoned arrived, and was delivered at the port of destination, so as to entitle the ship owners to collect the freight thereon specified in the bills of lading. The defendants paid to the plaintiffs $29,886, which they insisted was a full satisfaction of all claim by the plaintiffs on them, on account of said losses. A verdict for the plaintiffs, for $1,500, was taken by consent, subject to the opinion of the court, on a case to be made.

Marshall S. Bidwell, for plaintiffs.
William Kent, for defendants.

Before NELSON, Circuit Justice, and BETTS, District Judge.

BETTS, District Judge. The merits of this case depend upon the question, whether the recompense demanded by the plaintiffs for the loss of freight is to be determined by the adjustment stated on the termination of the voyage, or by the valuation fixed in the policy. The general rule of commercial law is,

that, as between insurers and insured, a valued policy is to be taken as setting the true value of the subject insured, unless the valuation is shown to be fraudulently or enormously excessive. This doctrine is laid down by text writers of the highest authority, and is sanctioned by adjudged cases in the United States and in England. 1 Marsh. Ins. (Condy's Ed. 228) 200; 1 Arn. Ins. 18, 309; 3 Kent, Comm. (8th Ed.) 272, 344; Phil. Ins. (3d Ed.) c. 14, arts. 1178, 1183; Lewis v. Rucker, 2 Burrows, 1171, 1172; Marine Ins. Co. v. Hodgson, 6 Cranch [10 U. S.] 206; Watson v. Insurance Co. of North America [Case No. 17,286]; Snell v. Delaware Ins. Co. [Id. 13,137]; De Longuemere v. Phoenix Ins. Co., 10 Johns. 127; De Longuemere v. New York Fire Ins. Co., Id. 201.

If the demand in controversy in this case rested upon a total loss of the freight insured, by direct perils of the sea, the amount recoverable by the plaintiffs would be determined by the valuation in the policy, the goods having been shipped and earning freight without regard to the actual worth of the freight at the port of departure or discharge. That position is conceded upon both sides. But the defence is placed upon what is regarded, by some authorities, as a radical distinction between a loss of freight by means of a jettison of the goods during transportation at sea, and a loss by destruction of the goods through sea perils acting directly on them—a distinction supposed to demand a different rule of compensation as between insurers and insured. Our examination of this case will be chiefly directed to that particular point.

The rule supposed by the defendants to govern this case is stated, in many text writers on insurance law, to be, in substance, that a loss by jettison is one compensated by general average, in the first instance, and not by the underwriters; their liability, under such loss, being to compensate the insured for his average contribution, and not primarily to recompense him for his direct loss from the sea peril. Arn. Ins. 948–950; Abb. Shipp. 354; 3 Kent, Comm. 232. This proposition is by no means universally accepted by text writers, to the extent of excluding the direct liability of the insurers for the jettison loss. 2 Phil. Ins. (3d Ed.) arts. 1348, 1617. And the contrary doctrine is established by the decisions of the courts of this state (Maggrath v. Church, 1 Caines, 196; Vandenheuvel v. United Ins. Co., 1 Johns. 406), and of the circuit court of the United States in the First circuit (Potter v. Providence Washington Ins. Co. [Case No. 11,336]). It is not our purpose to enter into this topic, upon which there is a conflict of decisions between the supreme courts of New York and Pennsylvania (Maggrath v. Church, ut supra; Lapsley v. United States Ins. Co., 4 Bin. 502); because it is essentially one of remedy concerning the method of enforcing remuneration, and does not involve the question of the responsibility of the defendants, or the amount of their liability. Conceding that they stand chargeable to the insured for the loss sustained by the jettison, it is unimportant to the ascertainment of the amount they are subject to pay, whether the action for its recovery be secondarily against them, for an indemnity, because of the average contribution to which the insured have been subjected, or primarily, upon the stipulations of the policy. We regard the defence in this case as resting on the position, that the plaintiffs are entitled to charge the defendants with no more than the contributory amount paid by the plaintiffs in discharge of the average adjustment; and, accordingly, in fixing the rule of recovery, it is essentially immaterial whether that adjustment and contribution be looked to as the foundation of the action, or be applied, in a suit on the policy, as the measure of the loss sustained by the plaintiffs.

We have not been referred to any case in which the facts presented the point for judgment in the aspect in which it comes before us. In Lapsley v. United States Ins. Co., ut supra, chiefly relied upon by the defendants, the reasoning of the court may be claimed to embrace the principles of this defence. But the insurance in that case was by an open policy, and the decisions and dicta referred to in its support had relation also to open policies. And it is to be further observed, that the specific question presented in this case did not arise in that. The controlling point there settled was, that the insured was not entitled to abandon the goods saved and charge the insurers with a total loss. It was also ruled, as to the mode of recovery, that the insured must first apply for the average contribution allotted him, and, in case it was not paid, that he would, after that, have his action against the underwriters for that amount. One consideration applies to that case, and affords ground for upholding it, which does not touch the cardinal feature of this. The amount of loss sustained by the insured, whether it consists in the destruction of a part or of the whole of his goods, must necessarily, on an open policy, be ascertained by means aliunde the policy. A standard of value, is, in such case, furnished by an average adjustment. It matters not that the adjustment may not be universally made upon a common principle of valuation, and that, under one jurisdiction, the prime cost, and, under another, the current price at the time of the loss, or the price at the time and place of shipment or of discharge, may govern the valuation. Jac. Sea Laws, 350, 351; Benecke (London Ed.) 296; 3 Kent, Comm. 335. Still, the adjustment, when fixed, determines the rate of allowance upon which the contribution is to be made. And, doubtless, it also affords the rule upon which the underwriter is chargeable, in satisfaction of that contribution. 2 Arn. Ins. 929. That liability, however,

would be the result of an implied and not an express engagement in respect to the amount of recompense to the insured. The action in the Pennsylvania court did not assume to make the underwriters liable for a sum fixed by positive stipulation, nor did the question as to the effect of a valuation in the policy, in diminishing or increasing the liability of an underwriter, when differing from the adjustment valuation, enter into the discussion or decision of the cause. It is not perceived that there is any distinction, in principle, between that case and the New York case of Maggrath v. Church, ut supra, from which it formally dissents, except on the point as to whether resort must, in the first instance, be had by the insured to the average contributors or their insurers, or whether the remedy may be primarily against the underwriters to the plaintiff, for the totality of the contribution due the plaintiff. This, as already suggested, partakes rather of a question of process than of right. In other respects, the two cases are substantially alike. In each, the plaintiff claimed a right to abandon, and to recover for a total loss; and, in each, the court decided that the case did not authorize an abandonment; and the compensation awarded in each was the sum fixed by general average.

As, in our opinion, it cannot be justly held to be an ingredient of the contract of insurance, that it shall be enforced conformably to the law of the place where it was executed, it is enough, in this instance, that the action brought conforms to the law of the forum in which it is prosecuted; and we are not called upon to determine whether it would be sustainable in the tribunals of Pennsylvania. The defendants having entered their appearance, and put in pleas of non-assumpsit and payment in the cause, we are to assume that the suit has been regularly instituted in this court, and that the plaintiffs are entitled to the same remedy under it, as if the action was in rem, or against non-residents of the state, duly served within this district.

The point upon the merits, then, is—Does the fact that the loss of freight was occasioned by a jettison of the goods, and was made a subject of general average, supersede or suspend the title of the plaintiffs to recompense upon the contract of insurance itself, or supplant that contract by a different obligation of the insurers, to be responsible only for the amount contributed by the insured on such general average? The affirmative of this position is maintained by the defendants, on what is assumed to be the settled law respecting losses resulting from jettison. No case, however, is produced in which that doctrine is directly adjudged in respect to claims under valued policies; and the question is to be answered upon general principles governing the application of the law merchant.

The reasoning in support of the defence is grounded upon the decision in Lapsley v. United States Ins. Co., ut supra, and the cases there referred to. But, as has been already remarked, the decision in that case is limited to its own facts, and determines no more than the method of recompense to be pursued by the insured under an open policy; and, unless that carries a legal implication that the same doctrine governs in cases of valued policies, the Pennsylvania court has not met the question now raised.

An able opinion by the counsel who argued the case for the insurance company in the Pennsylvania court, in support of the decision rendered therein, and of its applicability to the present case, has been produced on this argument, and submitted to us for perusal. He adds to the citations found in the reported case, a reference to 2 Valin, Comm. 654, and to 2 Boulay-Paty, Emerigon. The latter authority is not now accessible to us; but Valin, in the place cited, sheds no light on the present inquiry, because he is discussing the general rule as to the place where the valuation of freight on goods jettisoned is to be ascertained. He evidently regards the rule indicated by him as one to be applied where no method of fixing the value is established between the parties. 2 Valin, Comm. lib. 3, tit. 8, art. 6. We find no intimation, in any part of his Commentaries, that a fixed rule of adjustment was determined by any form of positive law, or that it would be incompetent for the ship-owner and the freighters to appoint a different mode of valuation than the worth of the freight, if it should all be made at the port of destination. Nor do we understand the 62d note of Roccus, relied upon in that argument, and cited in the Pennsylvania decision, to exact the interpretation put upon it in that relation. The question proposed and solved by the note, touches the scope of the obligations of underwriters. By asking if their liability is to secure an indemnity to the assured, and denying it that extent, the writer necessarily assumes that the query applies to open policies, under which usage supplies a measure of damages for want of one ascertained and determined between the parties. This is manifest from the provisions of notes 31 and 32. Roccus there marks the distinction when the goods are not valued in the policy, and when they are so valued. In the latter case, he says—where the goods have been estimated at a certain value, the estimated value must undoubtedly be paid. This view of the distinction is supported by Marshall (book 1, c. 15). Neither writer asserts that a loss by jettison is taken out of that plain and simple principle, and made subject to an arbitrary rule adverse to the agreement and stipulation of the parties.

We feel persuaded that no adjudged case will be found, in which an adjustment of general average is held to nullify the stipulation of the policy in regard to the indemnity

of the insured. The law only recognizes the adjustment as a rule of compensation in case the parties are silent. It does not inhibit their adopting a rule by mutual agreement.

In case of a deterioration or partial loss of property insured, there might be reason for resorting to the estimates in an adjustment, as a proper measure of that loss or damage, although the policy was a valued one, on the ground that the valuation had relation to the totality of the articles, and that, the loss not being total, the usage governing the allowance under general average might very properly supply the rule of damages. This seems to have been the point of view in which the supreme court of Massachusetts accepted the rule under a valued policy. Clark v. United Ins. Co., 7 Mass. 365. And that qualification would seem to apply only where a portion of the thing insured at a fixed valuation is preserved. It does not necessarily include distinct things totally lost, which compose part of a policy. Even this concession of the rule, however, is discountenanced by elementary writers of commanding authority (3 Kent. Comm. 274, and cases cited); and, in the English courts, it has been settled, that the valuation in a policy is to be considered the correct value in settling losses, total or partial (Irving v. Manning, 1 H. L. Cas. 287, 6 Man., G. & S. 391).

We answer, then, to the question raised in this case, whether the computation, in ascertaining the recompense to be made for the destruction of part of the goods, and the consequent loss of freight upon them, is to be on the basis of the average adjustment or of the valuation in the policy, that the latter furnishes the rule which the plaintiffs are entitled to have applied to this case. The advantage acquired by the plaintiffs is fortuitous. It might have resulted wholly to the benefit of the defendants. In forming the compact, both parties must be understood to have contemplated that, if a loss of freight occurred, it might greatly exceed the sum stated, or fall largely below it. They contracted upon that chance; and, as each expected the contingency might result in his favor, the one against whom it turns cannot, with any show of equity, insist upon the court's reframing the bargain by its authority, and, after he has been allowed to enjoy the probability of reaping an advantage from it, coming to his rescue, when the matter closes unpropitiously to his expectations, by adjudging the case as if the agreement had never been made by the parties.

In our opinion, the plaintiffs have a clear legal right to judgment for the amount of their loss, estimated upon the valuation fixed in the policy. The computations on this principle, submitted to the court, have not been objected to by the defendants; and judgment will be entered for the sum therein stated, unless they ask a reference to a commissioner to restate the allowance. Judgment accordingly.

GRISWOLD (UNITED STATES v.). See Case No. 15,266.

GRISWOLD (WILSON v.). See Case No. 17,-806.

GROFF (PENN v.). See Case No. 10,932.

GROH, The MICHAEL. See Case No. 9,522.