RICHARD J. LOCKWOOD *et al.*, Respondents, *v.* THE SANGAMO INSURANCE COMPANY, Appellant.

1. *Insurance, marine — Perils proximately causing loss, if insured against, need not be extraordinary.* — If a boat insured was seaworthy when leaving port, it does not affect the liability of her insurers whether or not the peril from which she suffered was an ordinary one or one which the boat, under good management, could safely have encountered — provided it was insured against and was the proximate cause of the loss — or whether it was extraordinary, and one which she was not built to encounter.

2. *Insurance, marine — Total loss — Damage of over fifty per cent. at time of repair, constructive total loss.* — A damage of over fifty per cent. of the value of an insured vessel when repaired is a constructive total loss of the vessel, in case of the policy containing no express provision to the contrary, and not one-half of its value in the policy.

3. *Insurance, marine — Abandonment, jury should be told what acts constitute.* — In an action on a policy of marine insurance, the jury should be told what acts are necessary to constitute an abandonment, or whether certain acts claimed to have been proved would constitute such abandonment.

4. *Insurance, marine — Agreement of parties best evidence of value of interest insured, when.* — In case of a total loss of an insured vessel, the agreement of the parties—no fraud being shown—and not the varying opinion of witnesses, is the best evidence of the value of the interest insured, and they must be governed by it.

*Madill* and *Dillon*, for appellant.

I. The instructions inform the jury that this boat, in order to be seaworthy, was required to be able to endure the ordinary perils of navigation on the Missouri river. And such is the law. (1 Phillips on Ins. 544; 2 Sumn. 197.) In other words, if the boat was lost by any injury, cause or peril not extraordinary in its character, the defendant could not be held liable. But the court further instructed the jury, in effect, to return a verdict for the plaintiffs if they found that the boat was lost from any peril of the river — utterly ignoring the distinction between ordinary and extraordinary perils. The result was that this boat, rotten from the outset, and totally unfit and unable to endure the usual and ordinary difficulties of navigation to be met with by all boats on all trips in the Missouri river, finally yielded to a series of these difficulties and sunk. And the jury were at liberty to find, and did, under the letter and spirit of this instruc-

tion and the argument of plaintiffs' counsel upon this precise point, find for the plaintiffs.

II. The third instruction, given at the instance of plaintiffs, required the jury to determine whether "an abandonment" had been made of the boat to the defendant. It does not, nor does any instruction in the case, attempt to instruct this jury what, in contemplation of law, constitutes an abandonment.

III. The third instruction, moreover, required the jury, if they believed the boat was damaged by sinking to more than half its value, and that abandonment, etc., was made, to find for the plaintiffs. On the contrary, the true rule is "that if the amount required to be expended in raising and repairing the vessel will be more than one-half of the value of the vessel when repaired, at the place of repair, then it is a case for constructive total loss by abandonment." (Bradlie *et al.* v. Maryland Ins. Co., 12 Pet. 394.)

IV. The defendant asked an instruction on the question of damages based on the proof of the value of the boat, as distinguished from the value of the interest insured as stated in the policy. This instruction was refused. The plaintiffs, on the contrary, asked and the court gave an instruction on the question of damages, based on the value of the interest stated in the policy instead of the value of the boat. This was error. (Peele *et al.* v. Merchants' Ins. Co., 3 Mason, 70; Bradlie *et al.* v. Maryland Ins. Co., 12 Pet. 378; 2 Pars. Mar. Ins. 134.)

*Rankin & Hayden,* for respondents.

I. The real question for the jury was, what was the proximate cause of the loss? and the main instruction asked by the plaintiffs did not go nearly so far in their favor as the court would have been justified in giving. (St. Louis Ins. Co. v. Glasgow, 8 Mo. 713; Columbia Ins. Co. v. Lawrence, 10 Pet. 508; Waters v Washington Ins. Co., 11 Pet. 213; Peters v. Warren Ins. Co., 14 Pet. 99; Merchants' Ins. Co. v. Butler, 20 Md. 41; Buck v. The Royal Exchange, 2 B. & A., 73; Walker v. Mortland, 5 B. & A. 171; Dixon v. Saddler, 5 M. & W. 405; 8 M. & W. 895; Redman v. Wilson, 14 M. & W. 476.) No recent decisions can

Lockwood et al. v. The Sangamo Ins. Co.

be found antagonistic to the law as laid down in these cases. On the contrary, where changes have been made, they have been from the doctrine of the old English law, which held the assured responsible for negligence, to that which holds the underwriter liable for negligence unless that negligence is the direct and proximate cause of the loss. See the changes which have been made in Ohio (Perrins, Adm'r, v. The Protection Ins. Co., 11 Ohio, 147); and in New York (Mathews v. Howard Ins. Co., 11 N. Y. 9); also Copeland v. N. E. Ins. Co., 2 Metc. 432; C. J. Gibbon's account of the law and the reasons for it, as now held in England and America (Am. Ins. Co. v. Insley, 7 Penn. St. 223), and the more recent cases which show that the maxim *causa proxima*, etc., is now more strenuously insisted upon and more freely applied than ever before. (Nelson v. Suffolk Ins. Co., 8 Cush. 477; Johnson v. Berkshire Ins. Co., 4 Allen, 388; Phœnix Ins. Co. v. Cochrane, 51 Penn. St. 149.)

II. The second instruction, as to the *quantum* of damages, was properly refused by the court. (*a*) The policy was a valued policy, and the agreed value is conclusive on the parties, except where there is a total want of insurable interest, or fraud, neither of which was pretended. (The Marine Ins. Co. v. Hodgson, 6 Cranch, 206; Alsop v. Commercial Ins. Co., 1 Sumn. 451; Patapsco Ins. Co. v. Coulter, 3 Pet. 242; Carson v. Marine Ins. Co., 2 Washb. 408; 16 La. Ann. 235; 3 Blatchf. 231. (*b*) There was no competent evidence tending to show that, at the time the policy was taken out, the value was less than that stated in the policy. (*c*) The instruction which the court gave at the request of the plaintiffs, upon the measure of damages, directed the jury only to " assess the damages at the amount of the damage sustained to the interest insured;" so that, even if defendant's position were correct, it could not complain.

BLISS, Judge, delivered the opinion of the court.

The defendant issued to the owners, for the use of plaintiffs, a policy of insurance upon the steamer Bridgeport, bound for the upper Missouri. The boat was sunk a little below Sioux City, and this suit was brought to recover the amount of the

insurance. The defense was based upon the alleged misconduct of the master, who was one of the owners, and a large amount of testimony was offered upon both sides, making a ponderous record, but the only questions of law preserved are raised by the instructions.

The first, given at the instance of the plaintiffs, instructed the jury that the steamer, to have been seaworthy when she started, "must have been sufficiently strong and staunch, well manned, equipped, and supplied to endure the ordinary perils of the voyage she was about to make," etc. Of this the defendant does not complain, but strongly condemns the second, which is as follows : "If the jury believe from the evidence that the steamboat Bridgeport was seaworthy at the time she left the port of St. Louis, that on her voyage she met with a peril or perils of the river above Omaha, which caused her to sink and become lost, then it is immaterial for the jury to consider whether, before she met with the perils which so caused her loss, she received other injuries which only indirectly or remotely contributed to the loss, or whether the negligence, carelessness, or mistakes of those in charge of her remotely contributed to the loss."

The defendant does not directly object to the well-settled doctrine contained in the latter part of this instruction, but complains that as a whole it contains a proposition inconsistent with the former instruction, and is thus calculated to mislead. This inconsistent proposition is supposed to be embraced in the hypothesis that the boat was sunk by meeting "a peril or perils above Omaha," etc., and defendant claims that these should have been extraordinary perils, inasmuch as by the former instruction the boat was supposed to be able to safely encounter ordinary ones. But this is a play upon words. The evidence shows that this boat was broken in and finally sunk from sundry collisions with snags. Unfortunately for our commerce, this grievous nuisance is a very common one upon our great river, and if the first instruction intended to convey the idea that boats must be sufficiently strong and staunch not to be endangered by snags, it went too far; for though, in order to constitute seaworthiness, it is necessary that boats for the Missouri trade be built with

stronger hulls than for rivers where there is no such danger, yet our experience shows that, even with the best boats and extra care, it is impossible wholly to guard against this peril.   And besides, the objection assumes a false proposition of law; for if the boat was seaworthy when leaving port, it does not matter whether or not the peril from which she suffered was an ordinary one, and one which the boat, under good management, could have safely encountered — provided it was insured against and was the proximate cause of the loss — or whether it was extraordinary, and one which she was not built to encounter.

The chief controversy has arisen upon the third instruction, which is as follows: " If the jury believe from the evidence that, after the boat sunk, she lay in such a place or manner that she could not, under all the circumstances of the case, have been raised and saved; or if the jury believe from the evidence that the property insured was damaged by the sinking to more than half its value, and that notice of abandonment was given and abandonment made by the captain of the boat to the defendant's agent, shortly after the sinking, then, in either of these events, the loss was a total loss."

This instruction contemplates both an actual and constructive total loss, and counsel object principally to the manner of stating the latter, and claim that the rule was not given.   Judge Story, in Bradlie v. The Maryland Ins. Co., 12 Pet. 398–9, says : " In respect to the mode of ascertaining the value of the ship, and of course whether she was injured to the amount of half her value, it has, upon the fullest consideration, been held by this court that the true basis of the valuation is the value of the ship at the time of the disaster; and that if, after the damage is or might be repaired, the ship is not or would not be worth, at the place of the repairs, double the cost of the repairs, it is to be treated as a technical (constructive) total loss."   And Phillips on Insurance, at the close of article 1539, thus gives his conclusion from the cases: " A damage over fifty per cent. of the value of the vessel when repaired is a constructive total loss of the vessel in case of the policy containing no express provision to the contrary, and not one-half its value in the policy."

Counsel complain because the jury were told to predicate their finding, so far, upon the damage "by the sinking to more than half its (the boat's) value." This certainly is not very full upon this point; but could the jury have been misled? What meaning must they necessarily have attached to this direction? They must have understood that they were to find that the boat, after it was sunk, was not worth half as much as if afloat, or as if afloat and free from the injuries that caused the sinking. And what is the criterion of such diminished value? Evidently the cost of raising it, or of raising it and repairing the injuries. So far as the right to abandon was based upon the extent of damage, the rule, as given, was harder upon the plaintiffs than though it had been given in the approved manner.

The same instruction is complained of because the question of law, as to what constitutes an abandonment, seems to have been left to the jury. Its language in this respect is not fortunate. To make an abandonment to the insurer involves certain acts on the part of the insured, and the jury should be told what acts are necessary, or whether certain acts claimed to have been proved would constitute such abandonment. But, in considering instructions, we must always look to the evidence and the real controversy between the parties. It is not disputed that the boat was sunk, that the master and crew left it, and that defendant's agent was at once notified of the facts. It is also clearly established that the insured inclosed to the agent, in a letter specifying its object, a copy of the protest; and the clerk who delivered it inquired of him if anything further was necessary, and he replied that he thought not. The loss was treated throughout, by all the parties, as an actual total loss, and not a constructive one; and the controversy was not had upon the question of abandonment, or whether the boat could be raised and repaired for half its value, but upon its seaworthiness and the conduct of the master in navigating it. Whether precisely regular or not, this instruction could not have prejudiced the defendant.

The action of the court in giving and refusing instructions in regard to the value of the interest insured is also questioned. This was not an open, but a valued, policy. It was expressly

agreed that the interest insured was worth $7,500, upon which a policy for $5,000 was issued.   The loss being a total one, the agreement of the parties — no fraud being shown — and not the varying opinion of witnesses, is the best evidence of this value, and they must be governed by it.   (3 Kent, 273 ; Phillips on Ins., art. 1178 ; 1 Pars. Mar. Ins. 258 ; Griswold v. The Union Mar. Ins. Co., 3 Blatchf. 231.)

This is one of those strongly litigated cases where all the material facts have been passed upon by a jury, and the defeated · party seeks to avoid the result by raising technical questions that could not have affected it.

We find no errors by which the defendant could have been injured, and the other judges concurring, the judgment will be affirmed.