NEW YORK & CUBA MAIL S. S. CO. v. ROYAL EXCHANGE ASSURANCE.

(District Court, S. D. New York.    March 28, 1906.)

INSURANCE—VALUED MARINE POLICY ON FREIGHT—PARTIAL LOSS.

> A marine policy insuring a vessel for one year in a stated amount against loss of freight "on board or not on board," "carried or not carried," "full interest admitted; the policy being deemed sufficient proof of interest," does not render the insurer liable for the full valued amount on a partial loss, and on a stranding of the vessel, preventing the completion of a voyage, it is entitled to a deduction of freight prepaid, and the amount earned by forwarding a portion of the cargo, above the cost of the salvage, and its liability is limited to the proportion of the face of the policy that the amount of the actual loss bears to the amount of the freight which would have been earned had the voyage been completed.

In Admiralty.    Suit on marine policy of insurance.

Wing, Putnam & Burlingham, for libellant.

Butler, Notman & Mynderse, for respondent.

ADAMS, District Judge.    This action was brought by The New York & Cuba Mail Steamship Company against The Royal Exchange Assurance to recover on a marine insurance policy the sum of £2062, or $10,034.74 in United States Currency, by reason of a loss suffered through the stranding of the steamer Vigilancia on Colorado Reef about 87 miles west of Havana, in January, 1901.

The libel alleges that on October 13th, 1900, the respondent issued to the libellant, at its home office in London, the policy in suit for one year from October 7th, 1900, on freight on board or not on board, valued at £2062 (or actual freight, if more) on the steamer Vigilancia, owned by the libellant, for which the libellant paid full premium at the rate of three pounds five shillings per cent.    It further alleges that the Vigilancia was employed in trade between New York, Cuban and Mexican ports, carrying chiefly general cargo and passengers, and that she was seaworthy at all the times before January 14th, 1901.    It is further alleged that the Vigilancia left Vera Cruz January 10th, and Progreso January 12th, 1901; that on January 14th, she stranded on Colorado Reef, whereby she was so damaged and disabled as to be unable to proceed or extricate herself and was by such perils wholly prevented from earning her pending freight; that a part of her cargo was destroyed and such as could be got off the wreck was forwarded at a cost which exceeded the whole freight collectible at destination, so that the libellant lost all its freight on the voyage.    It is further alleged that after the steamer had remained aground for about 5 months, during which time parts of her structure were cut away, she was floated by salvors, who brought her to New York, where she was undergoing repairs until after the 7th of October, 1901, so that she was never able to resume her service during the currency of the policy.    It is further alleged that the libellant made claim upon the respondent for payment of the insurance, in amount as above stated, with interest from March 1st, 1901, but no part has been paid and the whole amount is still due and owing.

The answer admits the issuance of the policy but denies that the

full terms and conditions thereof are set forth and calls for the production of the original. It further admits the facts respecting the steamer excepting that it has no knowledge as to the necessity or cost of forwarding the cargo. It further admits that in June, 1901, the steamer was brought to New York by the salvors and that a demand was made upon it for the payment of the amount of the policy which the respondent declined to pay. It further alleges as follows:

"Eighth: Further answering said libel the respondent upon information and belief avers that the amount of freight on board at the time of the stranding of the said steamer was much less than £2062 and that of said freight a portion had been prepaid and a portion was at the ship-owner's risk; that a large quantity of the cargo destined for Havana was forwarded to that port and freight thereon collected from the consignees, and that a large quantity of the cargo destined for New York was forwarded to that port and freight thereon collected from the consignees; that no abandonment of the freight has ever been made by the libellant to the respondent, and the respondent has no knowledge or information of facts warranting an abandonment; that the libellant has never supplied any facts upon which the loss under the policy could be properly adjusted; that any loss should be adjusted according to the law and custom of England, where the contract of insurance was issued, if such laws or customs differ from those of the United States, which cannot be known to respondent until the facts respecting the alleged loss are made known; that the respondent has always been ready and prepared to pay any sum for which it might be responsible under its said policy of insurance upon a proper adjustment, but that the respondent is not responsible for a total loss under the said policy."

The issues of fact raised by the pleadings have been determined by the following stipulation:

"It is hereby stipulated that the annexed statement of freight moneys may be admitted in evidence.

A part of the prepaid freight $1173.00 from Vera Cruz was for the carriage of cattle and horses carried under a bill of lading which provided that freight on each animal shipped should be prepaid, and that 'no part of which is to be refunded for account of death or any other accident to said animals.'

The rest of the prepaid freight $2294.41 was upon cargo carried under bills of lading containing the following clause:

No. 14. 'Also that freight payable on weight or measurement shall be paid either on gross weight or measurement landed from steamer or on bill of lading weight or measurements, as carrier elects; that full freight shall be paid on damaged or unsound goods, but no freight is due on any increase in bulk or weight caused by the absorption of water during the voyage; that freight prepaid shall not be returned, goods or vessel lost or not lost; and if on any sale of the goods for freight or charges or for any lien by carrier thereon there is a deficiency, the shipper agrees to pay the same.'

The libellant had engaged cargo at Havana for transportation to New York by a Line of steamers owned by the libellant, which cargo was intended to be shipped on the Vigilancia, the freight upon which was about $3,000, but exact figures are not now obtainable. If this item is material it is to be rated at $3,000, subject to correction. That cargo was carried to New York by the next sailing of a steamer of said Line.

The difference between the original freight collectible at New York ($3,-241.02) and the freight collectible on cargo saved for New York ($986.51) is accounted for by cargo lost or jettisoned, by reason of the stranding of the Vigilancia.

The Vigilancia sailed from Vera Cruz January 10th, 1901, for New York, via Progreso and Havana, stranded on January 14th before reaching Havana, and was finally floated on June 2nd, 1901.

She arrived at New York in hands of the salvors on June 14th, 1901, and was sold on July 10th, 1901. She was thereafter repaired, but the repairs were not completed until about May 20th, 1902. The underwriters who insured the hull of the Vigilancia paid a total loss upon an abandonment.

Before the 20th day of June, 1901, a written demand was made in London upon the Royal Exchange Assurance as follows:

'As this vessel, after having her machinery taken out of her, has been floated, and has left Havana for New York, where in all probability she will be put up for sale by auction (all the ship Underwriters having long since paid a total loss) we think you will now consider that the time has arrived when a total loss should be settled on your freight policy, and shall be obliged by your settlement accordingly.'

Dated New York, November 22, 1905.

New York & Cuba Mail S. S. Co. v. Royal Exchange.

Statement of Freight-Moneys.

Steamer Vigilancia.

Sailed from Vera Cruz Jan. 10/01
"        "    Progreso Jan 12/01
Freight collectible at Havana, none.

Freight prepaid to Havana from Progreso..............$2,020.45
"        "        "        "    from Vera Cruz............. 1,350.71
"        "        to Hamburg from Progreso.............. 10.50
Freight prepaid to New York from Vera Cruz............ 85.75

$3,467.41
Freight collectible at New York, incl. European cargo    $3,628.24
Deduct proportion of freight to Europe............ 207.22

$3,421.02

Mexican interior charges collectible (not collected) included
in above $3,421.02...................................$ 236.16
Original Mexican freight collectible at New York on cargo
saved from the Vigilancia.............................$ 986.51
Freight paid steamers for carrying cargo saved from the Vigi-
lancia to New York ..................................$ 858.79
Watching charges, etc. at Havana ...................... 89.70

Total collected at New York ....................$ 948.49
Collectible at New York ............................... 986.51
Paid other steamers .................................. 948.49

Difference ........................................$   38.02"

The question at issue is stated to be, whether the valuation is to stand as made, or if the prepaid freight and the above sum of $38.02 are to be deducted proportionately from the valuation.

The contentions of the libellant are:

"First. The valuation being in a time policy is to be deemed a continuing agreement to fix the amount of the libellant's insurable interest in the freight on any passage during the currency of the policy.

Second. The authorities that permit the opening of a freight valuation on the averment of short interest, have no application to this policy.

Third. There is no issue in the pleadings sufficient to support the deductions claimed.

Fourth. No abandonment was necessary."

The contentions of the respondent are:

"First. There was no total loss of freight.

Second. The respondent admits now, as it has always admitted, that there has been a loss under the policy, and admits its liability therefor.

Third. No account need be taken of the freight which has been engaged by the libellant at Havana.

Fourth. A recovery may be had only upon an adjustment based upon the libellant's own loss.

Fifth. There has been no constructive total loss.

Sixth. Upon no plea should the libellant be permitted to recover the amount of its demand.

Seventh. The recovery should be without any allowance for interest charges.

Eighth. The decree should be without costs."

It appears that there was no actual total loss of freight, as freight on some of the cargo, that for Havana, was prepaid and consequently not at risk. Moreover, some of the Havana cargo was delivered at destination and freight thereon earned and received. Some of the New York cargo was also delivered at destination. But the expense of delivering it was substantially equivalent to the value, a balance of $38.02 only, remaining above the necessary disbursements, so that the insured, at the time of commencing action, had received more than half of the actual freight for the voyage. He had received $1173. for freight from Vera Cruz for the carriage of cattle and horses, no part of which was to be refunded on account of death, or accident to the animals, and he had also received $2,294.41 in connection with the bill of lading which provided that it should not be returned in case of loss. Adding to these two sums the said amount of $38.02, the total saving of freight to the libellant was $3,505.43. It is urged by the respondent that the actual freight on board was $6,888.43 and that deducting $3,505.43, the actual loss of freight was $3,383. or $49^1/_{10}\%$ of the actual freight and the libellant is therefore entitled to recover $4,927.04.

Under these circumstances, what is the libellant entitled to recover? There was no total loss of freight. The insured had received or was entitled to receive, more than half the actual freight for the voyage. The libellant claims for a total loss on the theory that the insurance deals only with the freight moneys that were at the ship-owner's risk and the above excluded amount not being so, the valued policy covered only the amount at risk, which though actually less than the value, was nevertheless recoverable because the contract provision "carried or not carried" "on board or not on board" created an indemnity for the agreed measure of libellant's insurable interest, namely £2062.

The respondent refers to the decision of Wolcott v. Eagle Insurance Co. (Mass.) 4 Pick. 429, where it was said (page 436):

"If, by mistake or design, the assured should put on board only part of the goods to which he intended the valuation should apply, we think it clear that he could not recover as if the whole subject matter of the valuation had been put on board; but that in case of loss, he should recover such proportion of the valuation as the goods which were on board and at risk, should bear to the whole valuation."

It does not appear that there was any mistake or design here with respect to an overvaluation. There was unquestionably some freight at risk and it is urged that the case is covered by the remarks of Judge

Story in Alsop v. Commercial Ins. Co., 1 Sumn. 451, 1 Fed. Cas. 564, where it was said (page 570):

"There is this difference between policies in America and policies in England, containing stipulations, like those in the present policy, 'interest or no interest,' or 'without farther proof of interest than the policy,' that in the latter country, such policies being prohibited as wager policies, the insertion of the prohibited words in the policy is proof de facto, that they are mere wagers; whereas in America such policies are not treated as necessarily purporting to be wager policies; but they are deemed policies on interest, if the parties so understood, and agreed. So it was held in Amory v. Gilman, 2 Mass. 1, and in Clendining v. Church, 3 Caines (N. Y.) 141. Prima facie they so import; that the implication may be rebutted by proofs or admissions.

Now, in the present case, it is (as I have already stated) admitted, that the defendants meant to enter into a policy on interest, and not into a wager policy. They did not intend to wager or game, but to insure substantive interests. Whatever, then, the terms used are, the policy is to be deemed in point of law an interest policy. The plaintiff insists, that he meant it to be an interest policy; and if he had a substantive interest on board the ship, capable of being insured, I cannot perceive upon what principle the defendants can now treat it as a gaming policy. The policy was a wager policy, as to both parties, or as to neither party. It has not a double character, as a policy on interest, as to one, and not as to the other. If it be a policy on interest, then undoubtedly the plaintiff cannot recover, unless he shows an interest; for, in Massachusetts, at least, the doctrine of Goddart v. Garrett, 2 Vern. 269, is in full force."

That was a case of a valued interest on profits and turned principally on whether it was a wagering policy or a policy on interest. It was held to be the latter and a verdict for the full amount of the policy, was sustained on a motion for a new trial, the court pointing out that it was clearly a case of interest, to a substantial amount. At the end of Judge Story's opinion, however, he intimated that if a party insures property, expected to be on board of a ship to a large amount, upon a valued policy, and much less is in fact shipped, he is entitled to recover in case of loss a proportion pro rata only, notwithstanding the valuation.

Much of the freight here had been prepaid and was therefore not at risk, and a small amount was earned. The libellant at the time of commencing action, had received more than half of the actual freight for the voyage. There is a well marked distinction between losses on valued policies of vessels and the goods and freight on board.

In discussing the question, valued policies being involved, Judge Brown in the International Nav. Co. v. Atlantic Mut. Ins. Co. (D. C.) 100 Fed. 304, said (pages 317, 318):

"4. The defendants further contend generally, and on the same ground as above stated, that as the St. Paul was valued in these policies at only about two-thirds of her actual value, the insurers are not liable for more than that proportion of their insurance upon any partial loss, whatever its amount or nature; claiming that the same rule of deduction that is applicable to goods, should be applied to every loss on ship also, when once the amount of the loss is ascertained.

No doubt that is substantially the result of the rule applied to partial losses of goods under valued policies. The damaged goods are to be sold on arrival, and the gross proceeds compared with the market value of sound goods at the port of discharge; and the ratio of the loss to the sound value, as thus ascertained, is the proportion to be paid by each underwriter upon his policy. This was the rule applied by a special jury of merchants

to whom Lord Mansfield submitted the question in the leading case of Lewis v. Rucker, and which he afterwards on reargument illustrated and confirmed. 2 Burrows, 1167. It is now firmly established as respects merchandise. Phil. Ins. § 1203; 2 Arn. Ins. (6th Ed.) 928–933; Tyser, Ins. §§ 215, 225; McArthur, Ins. p. 247; Gow. Ins. p. 196; Johnson v. Sheddon, 2 East, 581; Tunno v. Edwards, 12 East, 488; Lawrence v. Insurance Co., 3 Johns. Cas. (N. Y.) 217; Insurance Co. v. Buckner, 5 Miss. 63; Stanton v. Insurance Co., 6 Miss. 744; Insurance Co. v. McGlashen, 54 Ill. 513, 5 Am. Rep. 162; Francis v. Boulton, 65 Law, J. Q. B. Div. 153. This general rule as to goods has been recently recognized by the supreme court also in the case of London Assur. Co. v. Companhia de Moagens, 167 U. S. 171, 17 Sup. Ct. 785, 43 L. Ed. 113, and the same rule seems applicable to partial losses of freight when the gross freight is ascertainable. 2 Arn. Ins. (6th Ed.) 949; McArthur, Ins. 235; Gow, Ins. 202; Griswold v. Insurance Co., 3 Blatchf. 231, Fed. Cas. No. 5,840; Fay v. Insurance Co., 16 Gray (Mass.) 455."

It was said in Denoon v. The Home and Colonial Assurance Company (Limited), 1 Aspinall Mar. Cas. N. S. 309 (at page 312):

"A valuation of freight refers prima facie to the freight of a full cargo, or the charter of the entire ship, and in this case there was nothing to show the underwriters that the valuation was of less than such full freight."

Here by reason, principally, of the prepayment a large part of the freight money was actually in the hands of the insured. The underwriter had no means of knowing the fact of such prepayment and it cannot be assumed that there was an intention to pay the full valued amount in case of a partial loss. If all the freight were lost, no matter that it was considerably less than the valuation, the libellant would doubtless be entitled to recover the full amount, but such does not seem to be the case, where only a part of the amount at risk is lost. It is urged by the libellant that as the contract provides: "Full interest admitted; the policy being deemed sufficient proof of interest," the respondent can not now question the amount. It seems, however, that such provision does not prevent the consideration that the freight has to some extent been realized by the libellant, nor justify a recovery of insurance thereon under the contract.

The actual freight on board was $6,888.43, excluding from consideration the freight of $207.22 to be earned by the trans Atlantic carriage. Of this amount, it seems that the libellant received $3,467.41 in advance and $38.02 the balance remaining of the New York freight after deducting the expense of earning it. The actual loss of freight was, therefore, $3,383.00 or 49¹/₁₀% of the actual freight. Applying such percentage of loss to the valuation, £2,062, or $10,034.72, the libellant was entitled to recover $4,927.04. No adequate reason appears why the libellant should be deprived of interest or costs, and they will be allowed.

Decree accordingly.