## Vandenheuvel *against* the United Insurance Company.

*If certain articles be enumerated in a policy of insurance, and a moiety of them be lost, the assured may abandon as for a total loss, though the loss is not equal to a moiety of the whole cargo. Where a vessel and cargo were captured, and proceedings in the admiralty court were against the whole cargo, & part condemned, and the residue released, and to prevent an appeal, and avoid further detention, the master agreed to pay a specific sum, as a ransom, and sold a part of the cargo, being more than a moiety of the part insured, to defray the expenses, and pay the ransom; it was held, that the sum paid for ransom and expenses was not general average; but must be borne by the cargo alone, & that the plaintiff was entitled to recover for a total loss.*

THIS was an action on a policy of insurance, on the cargo of the brig *Eliza*, from *Demerara* to *New-York*. The cause was tried at the *New-York* sittings, in *January*, 1806, before Mr. Justice *Livingston*. The cargo insured consisted of 191 hogsheads of sugar, 22 bags of coffee, and 30 puncheons of rum; the whole valued in the policy at 20,802 dollars, and 9 cents. There was property on board insured to the value of 26,053 dollars. The *vessel* was insured, and valued at $5000, though worth but $4,500. The *freight* from *Demerara* to *New-York* was 1772 dollars. The *Eliza* was captured, on the 6th of *September*, 1803, and carried into *St. Kitts*. An examination *in preparatorio* against vessel and cargo was had at that place. The vessel, afterwards, proceeded to *Antigua*, where a vice-admiralty court was held, and an order of restitution granted, on the ground, that the captor had neglected to prosecute his claim. In consequence of the order the master took possession of the vessel on the 12th *September*, previous to which the vessel and cargo had remained in the possession of the captors, and the vessel had been much injured in consequence of the inattention and neglect of the persons to whose custody she had been committed. On the 14th of *November*, the captors obtained an order for seizing the cargo; in consequence of which, the captors again took possession of the cargo and of the vessel, but the vessel was not proceeded against. On the 14th of *December*, 1803, a considerable part of the cargo, but much less than a moiety, being the produce of an estate owned by the plaintiff in *Demerara*, was condemned as enemy's property. The residue of the cargo was acquitted. The master prayed an appeal, but was unable to procure the requisite security. The captors threatened to appeal from that part of the sentence which acquitted the residue of the cargo, and to avoid further detention and trouble, the master compromised with the captors, who agreed

ALBANY,
August, 1806.

Vandenheuvel
v.
U. Insurance
Company.

to receive the sum of $5000, for the property condemned. Finding it impracticable to raise the money by the sale of bills, the master, with the permission of the vice-admiralty court, sold a part of the cargo, to wit, 102 hogsheads of sugar, and 29 puncheons of rum, being more than a moiety of the goods insured in quantity, and in value, according to the policy. The proceeds of the sale, amounting to $5929, were applied to pay the *ransom money*, charges of sale, and expenses attending the same. The vessel with the residue of the cargo, left *St. Kitts* on the 21st of *January*, 1804, and arrived at *New-York* on the 17th of *March*. During the voyage she experienced bad weather, which occasioned her to leak, and damaged the cargo. The plaintiff abandoned his interest to the defendants on the 28th of *February*, 1804, which was renewed on the 17th of *March*. On a survey of the cargo at *New-York*, it was found to have sustained sea-damage to the amount of 10 per cent, supposed to have arisen during the voyage from *St. Kitts* to *New-York*. The property was sold by consent, and without prejudice to the rights of the parties. The loss on the goods sold at *St. Kitts*, arising from the difference of the market there and at *New-York*, was $3278. Three accounts, marked *A B & C* were annexed to the case; the first contained the expenses incurred at *St. Kitts*, from the 23d of *September*, to the 12th of *November*, the time of acquittal, including seamen's wages and provisions; the second contained the expenses from the 12th of *November*, 1803, to the time of the vessel's departure from *St. Kitts*, including seamen's wages and provisions; the third contained the amount of *ransom money*, and the expenses incident to the sale of a part of the cargo for that purpose.

The jury found a verdict for the plaintiff for a total loss, and it was agreed that it should be modified under the direction of the court on a case stated. The plaintiff consented that such proportion of the general average, as was chargeable on vessel and freight, should be charged to him, waiving any right to throw the same, in the first instance, on the defendants.

ALBANY,
August, 1806.

Vandenheuvel
v.
U. Insurance
Company.

The following points were raised for the consideration of the court. 1. Whether the plaintiff is entitled to recover for a total or a partial loss ? 2. Which items in the account *B* are general average, and which a particular charge on the cargo, and whether the plaintiff is entitled to interest on them, and for what period ? 3. Whether the vessel and freight are chargeable with any of the items contained in the account *C*, or any part of the loss on the sale of the cargo therein specified, as general average ? 4. Supposing the abandonment to be established, is the plaintiff, who is owner of ship and cargo, entitled to full freight for the whole cargo from *Demerara* to *New-York*, or for the part only brought to *New-York*, and *pro rata itineris* for the residue ? It was agreed that the court should appoint some fit person to state the account of general average on such principles as they should direct.

*T. L. Ogden*, for the plaintiff. If all the items and expenses be estimated, the amount will be more than a moiety of the value of the cargo, and sufficient to justify the abandonment. It will be said that a part of these charges are to be borne by the vessel alone, and that the loss is thereby reduced to an average. But all the expenses and charges have been paid by the plaintiff out of his own funds, and beyond a moiety of the value. The question of contribution by the owners of vessel and freight is not to be raised here, and the plaintiff is a creditor for the whole loss.

The money paid for the ransom or liberation of the property, is not to be considered as general average ; for though the proceedings first commenced against vessel and cargo, yet the vessel was released, and all the subsequent proceedings which led to the ransom, were against the cargo alone. The vessel and freight were not brought into jeopardy. The cargo only was benefited by the ransom ; the freight was not in danger by the capture, for had not the liberation been effected, the captors would have been obliged to pay the freight. The vessel was always in a condition, and ready to proceed, and was entitled to full freight.

*Hoffman* and *Harison*, for the defendants. To justify the abandonment, the plaintiff must show that one half of the cargo has been lost. The value of the whole cargo, is $23,455, and the whole loss as stated, does not amount to a moiety; it is at least one hundred dollars less. The whole cargo, as well the part not insured, as that included in the policy, is liable to make good the loss. All the cargo was libelled, the proceedings were against the whole; and all was put in jeopardy; the ransom was of the whole cargo, and not of the part only that was insured. If so, then on no calculation whatever that can be made, will the loss amount to a moiety of the whole cargo. The plaintiff charges all the expenses and loss on the part insured; but where justice can be done by considering the case as a partial loss, courts ought not to be *astute* to find grounds for converting it into a total loss. The defendants are willing to pay a complete indemnity. Again, when the vessel and cargo were first carried in, both were detained, and the examinations *in preparatorio* were against both. All the expenses, therefore, from the time of capture until the release of the vessel, or when it appeared that the proceedings were against the cargo alone, are clearly *general average*, and this includes the account marked *A*. Many of the items in the account *B*, and several in *C*, clearly belong to a general average, or a particular loss on freight. Freight is due only for the cargo brought into *New-York*. It is true, that by an artificial, though just, reason, the courts of admiralty order the payment of freight; but if the ransom were necessary to entitle the plaintiff to the whole freight, then the freight has been benefited by the ransom, and ought to contribute with the cargo. The subsequent sea-damage cannot be taken into the account to enhance the loss. Subsequent events cannot justify an antecedent abandonment. The abandonment made in *February* must be referred to the loss at *Antigua*. But if taken into consideration, it ought to be calculated on the whole cargo, and not on the part which arrived at *New-York*. The defendants are willing to pay all that can be reasonably demanded; that is, all the loss sustained at *Antigua*.

ALBANY,
August, 1806.

Vandenheuvel
v.
U. Insurance
Company.

3 H

ALBANY,
August, 1806.

Vandenheuvel
v.
U. Insurance
Company.

*Radcliff*, in reply. This is a valued policy, and the parties are bound by the valuation. The valuation is on *specific articles* mentioned in the policy, and not on the cargo generally. The true rule is, that when a moiety of the subject insured is lost, the insured have a right to abandon, Otherwise, the whole subject insured might be lost, and yet the insured could not abandon, because it happened to be less than half the value of the whole cargo. Here is a loss of 102 hogsheads of sugar, and 29 puncheons of rum ; which is a *specific* loss of more than a moiety of the articles insured.

All the proceedings in the court of admiralty evince an intention to proceed against the cargo alone : the detention of the vessel became necessary for the sake of the cargo. On general principles, as well as on the rules adopted by the admiralty court of *Great Britain*, the whole freight was due. The cargo only was taken, and condemned as enemy's property. A neutral vessel is entitled to freight, and hence the maxim established by the belligerent, that a *capture* is tantamount to a delivery of the cargo.\* The damage of 10 per cent on the cargo coming from *St. Kitts*, must be calculated on the goods saved, and not on the whole cargo ; and as the abandonment was renewed on the arrival of the vessel, this must be considered as a part of the loss. In the case of *Leavenworth* v. *Delafield*,† it was decided that the actual value of the vessel at the time of loss, not the valuation in the policy, must be taken, in calculating the average. On principle and authority, therefore, the plaintiff was justified in making the abandonment, and is entitled to recover as for a total loss. He cited *Millar on Insurance*, 342. 2 *Brown's Civil and Admiralty Law*, 198, 199. *Abbot*, 274. 2 *Marshall*, 460. *Park*, 121. 3 *Robinson*, 304. 1 *Rob*. 388. *Snell, Stagg, & Co.* v. *United In. Comp.* in this court, in *MS.*

LIVINGSTON, J. delivered the opinion of the court. This is a valued policy on *specific articles*, part only of which being condemned, the master, to prevent the embarrassment of an appeal, with which he was threatened by the captors, agreed to give them five thousand dollars. To raise this sum, it became necessary to sell, of the merchandise insu-

\* 2 *Rob. Adm.
Rep.* 293.

† 1 *Caines*, 574.

red, not only more than a moiety in quantity, but also in value. From this brief statement it would seem to result, on principles long and well settled, that a technical total loss had happened.

The first objection to this claim is, that if the other cargo on board, which was not insured, be taken into calculation, the part sold will fall short of a moiety, and the loss be turned into a partial one. The residue of the cargo, this being an insurance on particular articles, is not to be brought into the computation. In settling and distributing an average loss, it is proper to look at every thing on board ; but when a moiety of any portion *specifically underwritten*, has been lost, its owner may abandon, however small its proportion may be to the whole lading. If *A*, having one barrel of sugar, and a hundred hogsheads of the same article in one vessel, insure only the former, which is taken away by a pirate, or otherwise lost, he will recover the whole insurance, though the property remaining may be more than fifty times its value.

It is next said, that all the expenses, as exhibited in the several accounts, with the loss on the sugars sold, make a general average, to be borne by vessel, freight, and whole cargo, as well the part uninsured, as that which was covered, and that on such an estimate, the loss will only be partial. Without denying the correctness of this argument, when expenses are incurred, or a ransom paid, manifestly for the liberation of all these subjects, (which may well be denied here) it is inapplicable to these parties, because the plaintiff, who was also owner of vessel and freight, had, with his own funds, and previous to the disposal of any of the cargo, paid more than the proportion chargeable on all the interests mentioned, except the insured articles, which were sold, or a part of them, to raise their own assessment, allowing every thing to be general average. The underwriters not having advanced the contribution payable by that part of the cargo which was insured, they cannot complain if they be called upon for their whole subscription, if to furnish this sum, more than its moiety was sacrificed ; for the owner was a sufferer to that extent by its sale, and may therefore, if he please, re-

gard the loss as total.   If the vessel, and residue of the cargo had been owned by strangers, which was in part the case, who had advanced their proportion of ransom and expenses, but to raise the share allotted to the insured part of the cargo, more than a moiety had been sold, it would most clearly have rendered the defendants liable for a total loss.   This ownership being in the plaintiff, can make no difference, for in either case it would be unjust to throw any part of a loss arising from a sacrifice of the cargo, on those who were not in default, but had already advanced more than on any statement could be necessary to redeem their interest from the impending jeopardy.   If then the ransom be not a general average, there must be an end to all question as to the totality of the loss, if it be true, as the case admits, that more than one half of the subject insured in quantity and in price, were disposed of to raise it.

It seems to be thought by the defendants, that a right to freight depended on a release of the cargo, and that therefore it should bear its proportion of any expense incurred to obtain its restitution in part or in whole.   This proceeds on a supposition that in case of a confiscation, freight is always lost.   What was the direction here as to the freight of the forfeited articles does not appear.   As the sentence proceeded on the ground of enemy-property, it ought to have been, and we may therefore presume it was, or would have been allowed.   This is conformable to the practice of British courts of admiralty, when property is condemned for no other reason, than its belonging to an enemy.   Freight, therefore, not necessarily depending on the sale of the cargo, ought not to be burthened with any part of its ransom. In *Maggrath & Higgins* v. *Church*, this court decided that in case of general average the proprietor of the cargo, is not bound to look to the owner of the vessel and freight, for his proportion, but may immediately call on his underwriter for indemnity, leaving him to his suit over against the other parties.   This principle, which would put an end to this controversy, we are not at liberty to apply here, because the plaintiff has consented to be charged with the proportion of

any general average payable by vessel and freight, without throwing it, in this suit, on the defendants.

Upon the whole, we are of opinion, that the plaintiff is entitled to recover as for a total loss. The items in the account B, which arose after the restoration, having been expended solely for the benefit of the cargo, and not to obtain a liberation of the vessel, which was not brought into controversy, must be borne, not as a general average, but as a particular charge on the *whole* cargo.

For the same reason, the vessel and freight are not chargeable with any part of the loss on the sales of the cargo, or of the disbursements in the account C, except so far as the parties are concluded by their own admissions in respect to the canvass and pork; the other items appertain to the cargo only, and must be borne proportionally by the defendants. The defendants will of course be credited with the nett proceeds of the cargo sold at *New-York*, deducting from such sales the freight as well as other charges. The plaintiff is entitled to full freight, because the taking out of the cargo at *St. Kitts* must be considered as the owner's own voluntary act, and for his benefit, to raise a sum which he agreed to pay as a ransom, and because, had it not been for this compromise, the vessel would have been entitled to, and probably have received, at *St. Kitts*, as much freight for the articles condemned, had they been sold there, as if they had been brought to *New-York*, and have been also entitled to the balance of freight, on a delivery of the residue of the cargo there.

On the proportion of expenses, to which the defendants are liable beyond a total loss, it is right that interest should be allowed to the assured, from the time the money was advanced, and on the balance due for a total loss, from the expiration of the term limited by the policy.

Upon these principles Mr. *John Ferrers* will state an account, and the verdict will be so modified, as to correspond with his report, for which sum judgment must be entered for the plaintiff.

Judgment for the plaintiff.