JEREMIAH EIGHMIE, Respondent, v. EDGAR B. TAYLOR, Administrator, etc., Appellant.

While the rule prohibiting oral evidence varying the terms of a written contract does not apply to separate independent collateral undertakings, or where the original contract was verbal, and a part only reduced to writing, yet where it appears by an inspection of a written contract, read, it may be, in the light of surrounding circumstances in order to its proper understanding and interpretation that it was intended to express the whole contract, it will be conclusively presumed so to do, and oral evidence may not be resorted to to prove that there was a stipulation or an undertaking necessarily connected with, and one of the elements of the contract, but not contained therein.

A warranty as to the present quality and condition of property sold is connected with, and belongs to a contract of sale as one of its elements.

In an action brought to recover damages for breach of an alleged warranty it appeared that C., defendant's intestate, contracted to sell to plaintiff a one-half interest in a lease of certain oil lands, in the tools and fixtures used in working the wells on the land, and in the oil stored on the land, for $6,000, and to receive in payment a mortgage for that amount.   C. executed and delivered to plaintiff a conveyance, by the terms of which

he sold and assigned his interest in said property, and plaintiff assumed and agreed to perform all the conditions of the lease, to release C. from all liability therefrom, and to assume any and all debts or liabilities of any nature whatsoever existing against C. by reason of his interest in the lease or in working the well. The deed closed with a declaration, stating its "intent" to be that C. should convey to plaintiff "all his right and interest in and to said lease, business and fixtures," and that plaintiff in accepting the same should release C. "of and from all liability arising therefrom, he himself assuming the same." Plaintiff assigned to C. the morgage which secured $6,000 and interest, with guaranty of payment, and plaintiff also executed to C. an agreement to refund to E. the interest which had then accrued, upon its payment by the mortgagor. *Held*, that taking the writings together they showed a full, definite and completed agreement of bargain and sale, and must be conclusively presumed to contain the whole contract; and that, therefore, evidence was improperly received of an oral warranty on the part of E. that the oil wells were yielding at the time a specified quantity of oil, and also sufficient gas to furnish fuel for the works ; that the oil was then worth a specified sum per barrel ; that the machinery and fixtures were new and of improved patterns, and that the debts did not exceed $1,000.

*Unger* v. *Jacobs* (7 Hun, 220), *Morgan* v. *Smith* (id. 244), *Witbeck* v. *Waine* (16 N. Y. 532), *Rozier* v. *B.*, *N. Y. & P. R. R. Co.* (15 N. Y. Weekly Dig. 99), *B. F. Ins. Co.* v. *Burger* (10 Hun, 56), *Wheeler* v. *Billings* (38 N. Y. 263), *Chapin* v. *Dobson* (78 1d. 74), *Jeffery* v. *Walton* (1 Stark. 213). *Batterman* v. *Pierce* (3 Hill, 171), *Erskine* v. *Adeane* (L. R., 8 Ch. App. 756), *Morgan* v. *Griffith* (L. R., 6 Exch. 70), distinguished.

(Argued January 30, 1885 ; decided March 3, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 31, 1884, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought against defendant, as administrator of the estate of James Collingwood, deceased, to recover damages for a breach of a warranty alleged to have been made by Collingwood on sale of an interest in certain property described in a conveyance thereof, executed by said Collingwood to plaintiff, of the body of which the following is a copy :

"This indenture, made and entered into this 28th day of December, 1872, between James Collingwood, of the city of

Poughkeepsie, county of Dutchess, and State of New York, of the first part, and Jeremiah Eighmie, of Roselle, New Jersey, of the second part, witnesseth, that the party of first part, for and in consideration of the sum of six thousand dollars to him in hand paid, the receipt of which is hereby acknowledged, has sold, and by these presents does hereby sell, assign, transfer and set over unto said party of the second part, his executors, administrators and assigns, all his undivided one-half interest in a certain lease known as lease No. two hundred and seven (207), situate in Triumph tract, Deerfield township, Warren county, State of Pennsylvania, and upon which is located the Collingwood wells, Nos. 1 and 2, and all the personal property, tools, fixtures, etc., thereon, situate and belonging to the same, and all the oil now stored on said tract, which said first party owns or in which he has an interest.

And the party of the second part in accepting said conveyance, and in consideration thereof, hereby covenants and agrees to, and with said party of the first part, his heirs, executors or administrators, to assume and perform all the covenants and conditions contained in said lease, and to release said first party of and from any and all liabilities therefrom, and to assume any and all debts or liabilities of any nature whatsoever now existing against said first party by reason of his said interest in said lease, or in working said wells, whether such liability or debt be against said first party singly, or against the firm of Collingwood & Co., of which he is a member.

It being the intent of this instrument, the said Collingwood, in consideration of said sum of money before mentioned, shall convey to said Eighmie all his right and interest in and to said lease, business and fixtures, and that said Eighmie, in accepting the same, shall release said Collingwood of and from all liability arising therefrom, he himself assuming the same."

Simultaneously with the execution of this conveyance, plaintiff executed to Collingwood, in payment of the consideration, an assignment of a bond and mortgage, for the sum of $6,000 with interest, with a guaranty of payment, and Collingwood executed to plaintiff an agreement to pay plaintiff the

interest which had accrued at the time of the assignment as soon as collected.

Plaintiff alleged and was permitted to prove on the trial under objection and exception, that Collingwood, in the negotiations for the sale, represented and warranted that the wells were yielding at least sixteen barrels of oil per day, and gas or water to supply the engines working them with all necessary fuel, that the oil was then worth $4 per barrel, that the machinery, tools and fixtures were of the latest and most improved patterns, new and in good condition, and that the debts and liabilities did not exceed $1,000, all of which representations and warranties were untrue.

*Samuel Hand* for appellant.    All statements and warranties made by Collingwood to Eighmie, or by Eighmie to Collingwood, are merged in the three written instruments executed at the consummation of the sale.    As these instruments contain no words of representation or warranty, no parol proof can be given showing such statements or warranties, to enlarge or vary the writing.    (*Juillard* v. *Chaffee*, 92 N. Y. 534; *Mumford* v. *McPherson*, 1 Johns. 413; *Bayard* v. *Malcolm*, id. 452; *Niles* v. *Culver*, 8 Barb. 205; *Filkins* v. *Whyland*, 24 N. Y. 339; *Foot* v. *Bentley*, 44 id. 166; *Speckels* v. *Saxe*, 1 E. D. S. 204; *Wilson* v. *Deen*, 74 N. Y. 531, 538; *Green* v. *Collins*, 86 id. 254; *Van Vliet* v. *McLean*, 23 Hun, 207.) Writings in the nature of contracts may not be altered or enlarged by parol.    (*Randall* v. *Rhodes*, 1 Curt. [U. S.] 90; *Sennett* v. *Johnston*, 9 Penn. St. 335; *Wilson* v. *Deen*, 74 N. Y. 532; *Naumberg* v. *Young*, 44 N. J. L. 331; *Hei* v. *Heller*, 53 Wis. 415.)    Every thing relating to the subject handled in the writing must in the absence of fraud or mistake appear in the paper or it will not be a part of the agreement.    (*Juillard* v. *Chaffee*, 92 N. Y. 529.)    The court erred in allowing the witness Barber to testify as to the flowing condition of the wells on the leased property in August and September, 1873, nine months after the sale. (*Sunderlin* v. *Wyman*, 1 T. & C. 17; *Flanagan* v. *Maddin*, 81 N. Y. 623.)    This action being on contract for breach of

warranty and not for fraud or deceit, the same rule would apply as to the damages for breach as for that of title or against incumbrances, viz.: the difference between the price paid and the actual value of the property, in any event not to exceed the price paid and interest for six years. (*Dimmick* v. *Lockwood*, 10 Wend. 155; *Krumn* v. *Beach*, 96 N. Y. 406.) The court erred in charging the jury that they might compute interest on the damages from the time of breach, in 1872, down to the trial. (*White* v. *Miller*, 78 N. Y. 393; *Little* v. *Banks*, 85 id. 258; 71 id. 134.) The court erred in admitting proof that the debts assumed and paid by Eighmie were greater than they had been stated by Collingwood. (*McKnight* v. *Dunlop*, 1 Seld. 537; *Brooks* v. *Christopher*, 5 Duer, 216; *Lathrop* v. *Bramhall*, 64 N. Y. 366; *Peck* v. *York*, 47 Barb. 131; *Sharpe* v. *Freeman*, 45 N. Y. 807.)

*I. H. Maynard* for respondent. The trial court properly held that the plaintiff might prove a parol warranty of the capacity, condition and productiveness of the wells, and that if such warranty was established to the satisfaction of the jury, and damage resulted, the plaintiff was entitled to recover. (*Chapin* v. *Dobson*, 78 N. Y. 74; *Juillard* v. *Chaffee*, 92 id. 529; *Remington* v. *Palmer*, 62 id. 33; *Hope* v. *Baler*, 58 id. 380; *S. C.*, 9 Sup. Ct. 458; *Van Brunt* v. *Day*, 81 N. Y. 251; *Dempsey* v. *Kip*, 61 id. 162; *Unger* v. *Jacobs*, 7 Hun, 220; *Schenectady* v. *Queen*, 15 Hun, 551; *Cassidy* v. *Begoden*, 38 Sup. Ct. 180; *Lewis* v. *Seabury*, 74 N. Y. 409; *Lanphire* v. *Slaughter*, 61 How. Pr. 36; *Fisher* v. *Abeel*, 66 Barb. 381; *Wheeler* v. *Billings*, 38 N. Y. 263; *Rexford* v. *Brunnell*, 1 id. 396; *Bingham* v. *Wederwax*, id. 509; *Rosier* v. *B., etc., R. R. Co.*, 15 Weekly Dig. 99; *Batterman* v. *Pierce*, 3 Hill, 171.) Where there is an agreement of purchase, and a written transfer of the property purchased is made in accordance therewith, it is always competent to prove by parol an independent and antecedent or contemporaneous promise or agreement of the vendor which induced the purchase and entered into and formed a part of the consideration therefor.

(*Rozier* v. *B.*, *N. Y. & P. R. R. Co.*, 15 Weekly Dig. 99; *Witbeck* v. *Waine*, 16 N. Y. 532; *Wheeler* v. *Billings*, 38 id. 263; *Unger* v. *Jacobs*, 7 Hun, 220; *Morgan* v. *Smith*, id. 244; *Brewster's F. Ins. Co.* v. *Berger*, 10 id. 56; *Adams* v. *Hull*, 2 Denio, 306; *Carter* v. *Hamilton*, Seld. Notes, 80; *Murray* v. *Smith*, 1 Duer, 412.) A party or person interested in the event of an action may testify to a conversation which he overheard between the deceased and a third person, and in which he did not participate. (*Cary* v. *White*, 59 N. Y. 326; *Hildebrant* v. *Crawford*, 65 id. 107; *Head* v. *Teter*, 10 Hun, 548; *Nichols* v. *Van Valkenburg*, 15 id. 230; *Holcomb* v. *Holcomb*, 20 id. 159; *Marsh* v. *Gilbert*, 2 Redf. 465; *Gross* v. *Welwood*, 9 Rep. 587; *Simmons* v. *Sisson*, 26 N. Y. 264; *Lobdell* v. *Lobdell*, 36 id. 327.) The acts and declarations of the agent, while engaged in the transaction of the business of his employment and relating directly thereto, are admissible as part of the *res gestæ*. (1 Greenl. on Ev. [4th ed.], § 113, p. 129 *et seq.; Low* v. *Hart*, 90 N. Y. 457; *Chapman* v. *Erie R. Co.*, 55 id. 583; *Hunter* v. *R. I. & M. Co.*, 20 Barb. 493; *Nelson* v. *L. I. R. R. Co.*, 7 Hun, 142.) The statements of Collingwood in regard to the market-price or value of the oil constituted a warranty, if the jury found that they were so intended. (*Harris* v. *Osburn*, 6 Weekly Dig. 442; *Folon* v. *Preston*, 12 id. 13; *Carley* v. *Wilkins*, 6 Barb. 557; *Brown* v. *Tuttle*, 66 id. 169.) There was abundant proof upon which to submit to the jury the question of the warranty. (*Duffy* v. *Mason*, 8 Cow. 25; *Whitney* v. *Sutton*, 10 Wend. 412; *Carey* v. *Wilkins*, 6 Barb. 557; *Holman* v. *Doyd*, 12 id. 336; *Rogers* v. *Ackerman*, 22 id. 134; *Wilbur* v. *Cartright*, 44 id. 536; *Hawkins* v. *Pemberton*, 51 N. Y. 198.) The court properly charged the jury that, if they found for the plaintiff, they might, in determining the amount of damages, in their discretion add interest by way of damages, if they saw fit to do it. (*Home Ins. Co.* v. *Penn. R. R. Co.*, 11 Hun, 182; *Hodge* v. *N. Y. C. & H. R. R. R. Co.*, 27 id. 394; *Black* v. *Camden & Amboy*, 45 Barb. 40; *Walrath* v. *Redfield*, 18 N. Y. 457; *Parrot* v. *Knickerbocker Ice Co.*, 46 id. 361; *Mairs*

v. *Manhattan R. E. Ass'n*, 89 id. 498 ; 2 Pars. on Cont. [ed. of 1855] 382; Sedg. on Dam. [4th ed.] 446.)

FINCH, J. Some of the exceptions to the rule which forbids parol evidence varying the terms of a written contract have been recently considered in this court. (*Chapin* v. *Dobson*, 78 N. Y. 74.) It was then said that the rule does not apply where the original contract was verbal and entire, and a part only was reduced to writing, and that it has no application to collateral undertakings. What was meant by the first of these two exceptions is apparent from the reasoning of the opinion and the authorities brought to its support. It was said of the instrument then in question that there was nothing upon its face to show that it was intended to express the whole contract between the parties, the inference being, as was declared in an earlier case, that where a contract does indicate such intention and design, and is one consummated by the writing, the presumption of law arises that the written instrument contains the whole of the agreement, and that where there is such formal contract of bargain and sale executed in writing there can be no question but that the parties intended the writing as a repository of the agreement itself. (*Filkins* v. *Whyland*, 24 N. Y. 338.) This first exception to the general rule is capable, if too broadly and loosely interpreted, of working the utter destruction of the rule. (1 Greenl. on Ev., § 284, a.) For if we may go outside of the instrument to prove that there was a stipulation not contained in it, and so that only part of the contract was put in writing, and then, because of that fact, enforce the oral stipulation, there will be little of value left in the rule itself. The writings which are protected from the effect of contemporaneous oral stipulations are those containing the terms of a contract between the parties, and designed to be the repository and evidence of their final intentions. If upon inspection and study of the writing, read, it may be, in the light of surrounding circumstances in order to its proper understanding and interpretation, it appears to contain the engagements of the parties, and to define the object

and measure the extent of such engagement, it constitutes the contract between them, and is presumed to contain the whole of that contract.   The case of *Filkins* v. *Whyland* (*supra*) illustrates this construction of the exception.   Whether the writing was in effect and in design the contract of the parties, or a mere receipt for purchase-price was the question discussed and decided.   And upon the paper itself, read in the light of the surrounding circumstances, the court said it was defective as a contract, but complete as an acknowledgment of payment, and added : " That can hardly be named a written contract which contains no contract stipulations."

The primary inquiry in the present case, therefore, respects the character of the writings executed by the parties. . They consist of a deed by which Collingwood sold and assigned to Eighmie his one undivided half of a described lease of oil lands, together with the personal property, tools and fixtures, and all the oil stored on said tract which Collingwood owned, or in which he had an interest.   The deed bound Eighmie, by its acceptance, to assume and perform all the covenants and conditions of the lease, and to release Collingwood from all liability therefrom, and to assume any and all debts or liabilities of any nature whatsoever existing against Collingwood by reason of his interest in the lease or in working the wells, and whether the liability ran against him as an individual or the firm of Collingwood & Co.   The deed closed with a declaration, stating its "intent" to be that " Collingwood, in consideration of said sum of money before mentioned, shall convey to said Eighmie all his right and interest in and to said lease, business and fixtures, and that said Eighmie, in accepting the same, shall release said Collingwood of and from all liability arising therefrom, he himself assuming the same."   The consideration named in this deed was $6,000, and the payment of that led to the second paper between the parties, which was an assignment by Eighmie to Collingwood of a mortgage for that amount, the payment of which the assignor guaranteed.   But since there was some accrued interest upon the mortgage, which Collingwood as assignee would receive in excess of the $6,000,

a third paper was prepared and executed, by which he agreed to refund such earned interest to Eighmie upon its receipt from the mortgagor. Of course these three papers are to be read together, and treated as a single instrument, and so read, it is impossible to construe them as any thing else than the deliberate contract of the parties for the sale and purchase of the oil lease and fixtures. They contain a definite agreement of bargain and sale, they specify the consideration, they describe the subject, they contain mutual covenants for the protection of each party, and leave nothing of a complete, perfect and consummated agreement to be supplied. On their face no element is wanting of an entire contract, exhausting the final intentions of both parties. It is, therefore, such a paper as falls within the protection of the rule, and must be conclusively presumed to contain the whole contract as made. The effort to add to or graft upon it a parol warranty by Collingwood that the oil wells upon the lease were yielding sixteen barrels per day, and sufficient gas to furnish fuel for the works; that the oil was then worth $4 per barrel, and the machinery and fixtures were new and of improved pattern; and that the debts did not exceed $1,000, cannot be sustained upon the ground that the papers contained but a part of the contract, and were so intended and designed. One who read the writing with a full knowledge of the extrinsic facts that Collingwood owned one-half of the lease, subject to liabilities to the lessor, and had been engaged in operating the wells, and so had provided tools and fixtures and incurred debts in prosecuting the enterprise; that Eighmie owned a $6,000 mortgage, which he deemed good, and that the parties had negotiated for an exchange of one-half of the oil lease for the mortgage would see in the papers the contract and its consummation; a sufficient statement of all its essential details; a complete and perfected agreement.

He would find no defect or omission; no uncertainty in subject-matter or in terms; nothing which indicated some missing detail essential to be settled or supplied. Such a paper falls within the rule of protection and not within the exception. Where the writing does not purport to disclose the contract,

or cover it; where, in view of its language read in connection with the attendant facts it seems not designed as a written statement of an agreement, but merely as an execution of some part or detail of an unexpressed contract; where it purports only to state one side of an agreement merely and is the act of one of the parties only, in the performance of his promise; in these and the like cases the exception may properly apply, and the oral agreement be shown. Of this character were the cases relied upon by the respondent. (*Unger* v. *Jacobs*, 7 Hun, 220; *Morgan* v. *Smith*, id. 244; *Witbeck* v. *Waine*, 16 N. Y. 532; *Rozier* v. *Buffalo, N. Y. & Phila. R. R. Co*, 15 Weekly Dig. 99; *Brewers' Fire Ins. Co.* v. *Burger*, 10 Hun, 56; *Wheeler* v. *Billings*, 38 N. Y. 263.) But the present, as we have said, was not such a case. The papers covered both sides of an entire contract; were designed to signify and to execute its terms; were adequate for that purpose; and so, could not be varied or affected by parol evidence adding new stipulations.

It is further insisted, however, that the second exception to the rule is applicable, and that a recovery upon the parol warranty may be sustained on the ground that it constituted a separate collateral agreement, independent of the writing, and not at all in conflict with it. The argument at this point is rested chiefly upon the case of *Chapin* v. *Dobson* (*supra*), which is claimed to be decisive. That case did sustain a parol warranty in the face of a written agreement of sale, but that warranty was not as to the then present quality or condition of the thing sold but as to what it would accomplish in the future, after the completed and executed sale, the terms of which it did not seek to touch or modify. The opinion of DANFORTH, J., brings out this distinction with a clearness which it is not easy to mistake. He says " it is one thing to agree to sell or furnish machines of a specific kind, as of such a patent, or of a particular designation, and another thing to undertake that they shall operate in a particular manner or with a certain effect, or, as in this case, that they shall do the buyer's work satisfactorily." The guaranty sustained, it is thus apparent, was founded upon a future contingency, which assumed the com-

pleted contract as executed and to remain unchanged. Indeed, the agreement was, in the specified emergency, to take the machines back. If the case be near the border line in the application of the exception to the facts, there can be no question as to the soundness of the doctrine asserted. The authorities cited in the opinion abundantly illustrate the distinction which was thus stated and applied. The first and oldest of them all (*Jeffery* v. *Walton*, 1 Stark. 213) was a case of the hire of a horse, evidenced by a memorandum in writing showing the hiring, its term and the consideration. It appeared that at the time it was also orally agreed that injuries from the horse shying should be at the risk of the hirer. Lord Ellenborough termed this oral stipulation a " suppletory " agreement ; that is, not an element or detail of a contract of hiring, but a stipulation which assumed that agreement precisely as indicated by the writing, but dealt with a possible contingency in the future, as to which a separate or suppletory agreement was made. In another case the action was upon a note given for wood on plaintiff's land, and the defense was permission that it might remain after the sale and a guaranty against fire while so remaining, established orally. (*Batterman* v. *Pierce*, 3 Hill, 171.) Here again there was a collateral agreement, in no manner affecting the terms of the sale of the wood, but presupposing that sale, perfected and carried out as agreed, and respecting a future contingency and newly constituted relations of the parties. The cases of *Erskine* v. *Adeane* (L. R., 8 Ch. App. 756) and *Morgan* v. *Griffith* (L. R., 6 Exch. 70) showed written leases, but parol agreements on the part of the landlords to reduce or destroy the game, and these agreements, relating not to the terms of the leases, but to the new relations of the parties in the future to be established by the leases, were described in *Johnson* v. *Oppenheim* (55 N. Y. 280, 293) " as independent of and strictly collateral to the contracts of letting." In *Adams* v. *Hull* (2 Den. 306, 311), cited by the respondent, the court said of the evidence offered in relation to the written covenants : " It left them untouched. The offer, in fact, assumed their validity and that they had been fulfilled."

Some of the cases in which the parol evidence has been admitted are justified upon the further ground that it related wholly to the consideration and tended to show or explain what it in truth was. We are thus prepared to consider the final inquiry, whether the warranty proved by parol constituted a separate collateral agreement, or an element and detail of the original contract itself. It is obvious at a glance that the covenants related to the then present quality or condition of the thing sold, and not to contingencies or results to arise after the execution of the contract and in the future. If the warranty had been that the wells on the leased land would continue for a fixed period to yield as much oil as they were then yielding, or a certain definite quantity at the end of such period, the agreement would have been much nearer those which have been referred to. The warranty did not assume the unchanged validity of the contract of sale as expressed in the written terms, but added conditions which imperiled that validity and struck at the identity of the thing sold. How closely a warranty of present quality and condition is connected with the contract of sale and belongs to it, as one of its elements, becomes apparent in the law of agency. A general authority to sell is held to be an authority to warrant the quality or. condition of the article sold, though no such express authority is given. It is one of the natural terms or conditions of the contract authorized, and so much so that it requires no separate or distinct grant of power. Here the lease with wells upon the land, yielding but four barrels of oil per day, and gas insufficient for the machinery, was what the writing in fact transferred. The warranty required wells yielding a larger amount both of oil and gas. The written contract was thus changed in its legal effect. As it stood it contemplated a sale without reference to the quality or condition of the wells, and whatever that quality or condition might in fact be. As modified by the parol evidence it becomes a sale of the lease with wells yielding a certain amount of both oil and gas. The case as it stands cannot be distinguished from *Mumford* v. *McPherson* (1 Johns. 413) and *Bayard* v. *Malcolm* (id. 467). The first

of these cases was an effort to show, in face of a written bill of sale, a parol warranty that the ship was copper-fastened. In the second there was a written contract for the sale of a newspaper with representations as to its circulation, its advertising business and its expenses. KENT, J., said of these representations, treated as warranties, that they could not be proved by parol since they varied the written contract.

We cannot sustain the present judgment without enlarging the admissibility of parol evidence to an extent sufficient to substantially destroy the usefulness and protection of a written instrument. While there is often difficulty upon the facts in drawing the lines of distinction, we think it sufficiently clear that in the present case the parol warranty was not admissible.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.