JOHN THOMAS AND VAN BUREN THOMAS, RESPONDENTS, *v.* MILO SCUTT, APPELLANT.

*Bill of sale — when it constitutes a contract, which cannot be varied by parol evidence tending to show it to be a mortgage.*

Where the owner of chattels, to secure an indebtedness owing by him, has executed to his creditor a mortgage thereon, and subsequently gives to such creditor a bill of sale thereof, in which latter instrument are apt and absolute words of conveyance, and by which a definite consideration is agreed to be paid for the property mentioned therein (the respective prices for each of several classes of property being specified), and it is further provided that the said price shall " apply on the amount due on said chattel mortgage, " it is not competent for the creditor, who has accepted such bill of sale, to offer parol evidence to prove that prior to, and at the time of drawing the bill of sale the debtor refused to make an absolute disposition of the property, and that such was not the intention of such bill of sale; that the bill of sale was given simply to secure the indebtedness, and that the debtor was to have the full benefit of the proceeds of sale of said lumber when made, after paying his debt and the expenses of marketing it.

*Marsh* v. *McNair* (99 N. Y., 179) followed.

Such an instrument is more than a mere assignment, it constitutes a contract in writing within the rule which prohibits parol evidence to explain, vary and contradict such contracts.

APPEAL from a judgment in favor of the plaintiffs, entered in the office of the clerk of Delaware county March 9, 1888, upon the report of a referee.

Action to recover for " lumber, timber, scantling and boards had and received by the defendant of plaintiffs, sold and delivered, and for which he promised and agreed to pay." The answer, among

other things, sets up "that all the lumber had by the defendant of the plaintiffs was had under and by virtue of an agreement which the plaintiffs had failed to fulfill on their part, and that by virtue of the terms of the agreement the defendant is not liable to account for the same." Certain counter-claims are also set up. Plaintiffs are lumbermen residing in the town of Hancock. Defendant is a store-keeper residing in the same town. In the spring of 1884 the plaintiffs were the owners of a raft of lumber, called the Peas Eddy raft, then in their possession and lying in the town of Hancock. The defendant took and disposed of it, and the plaintiffs have had a recovery for the value thereof, less twenty-three dollars and ninety-one cents, the balance of an account found to be due the defendant from the plaintiff.

Much evidence was taken upon the trial, in respect to the items of dealing between the parties, extending over a series of years. March 29, 1883, the plaintiffs owed the defendant about $1,303.13, and for the purpose of securing that amount, and certain advances to be made by the defendant, prior to the 1st of May, 1883, the plaintiffs executed a chattel mortgage to the defendant upon a large quantity of lumber in the sum of $1,600. Upon June 11, 1883, the plaintiffs executed and delivered to the defendant a bill of sale, which was attached to a copy of the chattel mortgage, which is in the following language: "For the consideration hereinafter named, we hereby sell, assign, transfer and deliver to Milo Scutt, one raft of hemlock toggle timber, and loading thereon, now lying at Equinunk Eddy, just below the rock, in Buckingham township, Pa., the said lumber being covered by a chattel mortgage, of which the mortgage hereto attached is a copy, viz.:

| | |
|---|---:|
| "4,000 feet of cherry boards, at $12 .................. | $48 00 |
| "35,000 maple plank, about, at $10 .................. | 350 00 |
| "11,000 feet of toggle timber, at 3c.................. | 330 00 |
| | $728 00 |

"The same to apply on the amount due on said chattel mortgage, and if any mistake in amount of lumber, same to be corrected.

"Dated *June* 11, 1883.

"JOHN THOMAS,

"For JOHN and VAN BUREN THOMAS."

On June 18, 1883, the plaintiffs paid to the defendant the sum of $865,52, which paid up the chattel mortgage debt, if the sum of $728 named in the bill of sale be applied thereon. July fifth a charge was made against the plaintiffs by the defendant for twenty-three dollars and ninety-one cents, when the dealings between the parties ceased. The defendant claimed, however, a balance due him, and by reason thereof took possession of the Peas Eddy raft of lumber The plaintiffs insisted they were not indebted to defendant, and on different occasions, in the spring of 1884, they sought a settlement with the defendant and offered to pay any balance, but such settlement was not had, and defendant took possession of the property owned by the plaintiffs. Apparently the defendant was not fortunate in handling the property covered by the bill of sale, and after allowing it to remain through the summer months in Philadelphia, he finally sold it for fire-wood, and his position upon the trial was that the plaintiffs, and not he, should sustain the loss.

*H. & W. J. Welsh*, for the appellants.

*J. B. Gleason* and *A. Taylor*, for the respondent.

HARDIN, P. J.:

After the plaintiffs had given evidence of the cash payments made upon the chattel mortgage and read the bill of sale in evidence, they took the position that the defendant's chattel mortgage had been paid, and that the defendant had no title to or interest in the lumber mentioned in the complaint; that having taken and converted the same to his use he was indebted to the plaintiffs therefor. To controvert this position the defendant insisted upon the trial that the bill of sale was executed and delivered as a collateral security, or that the same was a conditional sale. The defendant put a witness upon the stand who drew the bill of sale, upon which occasion one of the plaintiffs and the defendant were present. To the witness the defendant propounded the question, viz.: " State what was said between the parties in reference to the bill of sale?" This was objected to on the ground that it was immaterial and improper, and that the writing is the best evidence and cannot be contradicted or avoided by parole. Thereupon the defendant avowed that he

" intends to show that Exhibit B (bill of sale), was given as security only." Thereupon the objection was sustained and the defendant excepted. Then the defendant proposed " to prove by this witness that, prior to and at the time of the drawing of the bill of sale, the plaintiffs refused to make an absolute disposition of the lumber; that they were informed that such was not intended, but that the raft was in Pennsylvania, and that the chattel mortgage did not protect defendant against a levy upon or disposition of the lumber by the plaintiffs in that State; that plaintiffs should have the full benefit of the lumber and what it brought on the sale when marketed, after paying the plaintiff's claim and the expense of running and marketing it; that plaintiffs said they were satisfied with that and would make the bill of sale on this basis, and thereupon did sign the bill of sale." Plaintiffs stated the same grounds of objection as have been mentioned above, and the objections were sustained and the defendant excepted.

After the defendant had been examined as a witness, and near the close of the evidence in the case, the plaintiffs moved " to strike out all that part of the evidence of Milo Scutt as to what occurred between him and John Thomas with reference to the bill of sale of June 11, 1883, prior to and down to the time of the execution of the bill of sale, on the ground that parol evidence cannot be given to contradict or vary the terms of that instrument." This motion was objected to by the defendant " on the ground that the evidence tends to show a conditional sale and is not inconsistent with and does not dispute the bill of sale; that the motion extends to the acts of the parties, and is not limited to what was said." The motion was granted and the defendant excepted. These two rulings present the principal question involved in the appeal now before us. It was conceded at the trial that the defendant took possession of the property under the bill of sale. That instrument stated the consideration to be $728 for the property mentioned therein, and that the plaintiffs thereby did " sell, assign, transfer and deliver" to the defendant. The words of transfer were absolute; the price for each class of property was mentioned, and the total price of the property was therein stated to amount to $728. It then contains an agreement between the parties, mutually, as to how the $728 should be paid or credited between the parties. Their contract was in precise words,

definite and certain, with no ambiguity. The bill of sale used this language, after a statement of the price of the lumber at $728, viz., "the same to apply on the amount due on said chattel mortgage." We, therefore, see, by an inspection of the instrument, that the plaintiffs agreed to sell for $728, and the defendant agreed to buy for that amount, and to apply that amount upon the chattel mortgage which he held against the plaintiffs. By the terms of the instrument the precise consideration upon which the property was transferred is specified, and it is stated that the defendant shall apply that sum upon the chattel mortgage.

We think the language of the court in *Marsh* v. *McNair* (99 N. Y., 179), is applicable to the bill of sale. In that case the court said : " This instrument is more than an assignment. It contains what both parties agreed to do. It shows that the assignment was made for the purposes mentioned, and precisely what Gibson was to do in consideration thereof. He became bound to do precisely what was specified for him to do, and he could have been sued by the assignors for damages if he had failed to perform. Hence the instrument is not a mere assignment or transfer of the policy. It is a contract in writing within the rule which prohibits parol evidence. to explain, vary or contradict such contracts."

Applying the language laid down in *Marsh* v. *McNair* (99 N. Y., 179), we are of the opinion that the rulings made by the referee, rejecting the evidence offered and striking out the evidence that had been received, tending to show that the bill of sale was taken as collateral security, were correct. The writing itself was the highest controlling evidence of the contract between the parties. (*Long* v. *Millerton Iron Company*, 101 N. Y., 638 ; *Eighmie* v. *Taylor*, 98 id., 288 ; *Renard* v. *Sampson*, 12 id., 561 ; *Shaw* v. *Republic Life Insurance Co.*, 69 id., 286.)

We are of the opinion that the referee committed no error of law in refusing to find that the parties had waived the force and effect of the bill of sale. What credence should be given to the testimony of the defendant as a witness was a question for the referee to pass upon ; besides his testimony upon that subject was largely contradicted by the testimony of the witness Van Buren Thomas. There was much conflicting evidence given in respect to the property taken by the defendant and its value. After a careful consideration

of the evidence on either side of the question that is involved, and after giving the findings of the referee their proper influence, we are of opinion that we ought not to disturb the same by holding that they are unsupported by evidence or contrary to the weight of the evidence.

Judgment affirmed, with costs.

MARTIN and MERWIN, JJ., concurred.

Judgment affirmed, with costs.