LAUGHLIN et ux. v. MANSON.

(Supreme Court, Appellate Term.   December 22, 1909.)

1. EVIDENCE (§ 417*)—PAROL EVIDENCE—SHOWING TERMS OF CONTRACT PARTLY IN WRITING.

A letter from defendant to one of the plaintiffs, stating that, in accordance with their conversation, he would employ such plaintiff to manage a certain hotel, and his wife, the other plaintiff, to assist him, their joint salary to be $150 per month, they to take charge four days later, from which time their salary would commence, all the parties being in New York, and the hotel being in Bermuda, is obviously incomplete, so that oral evidence that there was a definite hiring for two months is admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1884; Dec. Dig. § 417.*]

2. PRINCIPAL AND AGENT (§ 23*)—EVIDENCE OF AGENCY.

Where defendant, in employing plaintiffs to manage a hotel, told them that H. was his representative at the place the hotel was located, and that C., to whom he gave them a letter, would install them, and C. left the matter to H., whom they found in possession, they were justified in dealing with them in the matter of taking possession as the agents of defendants.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 41; Dec. Dig. § 23.*]

3. MASTER AND SERVANT (§ 59*)—BREACH OF CONTRACT BY MASTER.

Where defendant employed plaintiffs to manage a hotel, and his agents refused to allow plaintiffs to take possession, and defendant ignored their letters, and refused to see their representative, on the subject, there was a breach of contract by him, and not an abandonment of the employment by them; they not being obliged to take possession by force.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 59.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by John P. Laughlin and another against Philip Manson. From a judgment for plaintiffs, after a trial without a jury, defendant appeals. Affirmed.

Argued before GIEGERICH, GOFF, and LEHMAN, JJ.

Wile & Oviatt, for appellant.

Francis X. Carmody, for respondents.

GIEGERICH, J. The action is to recover damages for breach of a contract of employment. The answer was, in effect, a general denial.

The defendant was the lessee of a hotel at St. George, Bermuda, and in February, 1909, advertised, in the city of New York, for a manager to take charge of the business. The plaintiffs, who are husband and wife, answered his advertisement, and, after several interviews, were engaged by him, the husband to act as manager of the hotel and the wife to assist him generally. When the negotiations had been concluded, the defendant wrote and delivered the following letter to the plaintiff John P. Laughlin:

"New York, March 2, 1909.

"Mr. John P. Laughlin, New York City—Dear Sir: In accordance with our conversation, I will employ you to manage the St. George's Hotel in Bermuda, and your wife to assist you generally by looking after the housework, and also assist in the front of the house; your joint salary to be one hundred and fifty dollars ($150.00) per month. You are to take charge on March 6, 1909, from which date your salary will commence.

"Yours very truly,                              Philip Manson."

The defendant also gave the plaintiffs a letter of introduction to a Capt. Myers, who was the president of the corporation which owned the hotel property, stating that he had engaged the plaintiffs in the capacities already mentioned. The plaintiffs accordingly went to Bermuda, arriving there on March 6, 1909. On their arrival they presented their letter of introduction to Capt. Myers, who, however, was about to leave for New York, and, not having time to go to the hotel with them, directed them to see Harry Manson, the defendant's brother, and made the following indorsement on the letter:

"Mr. Harry Manson: Please let Mr. Miles take his former position. He is employed by the week. You represent your brother, Philip Manson. Mr. Laughlin will arrange with you."

On the evening of their arrival the plaintiffs accordingly saw Harry Manson and presented the letter, with Capt. Myers' indorsement, to him. He said:

"I don't know what my brother means by sending a man down here now as manager. I cannot understand what he means by sending down a manager, when I cablegrammed him that I had placed a manager in here. I cannot place you now. I cannot let this man go, who has been here and assisting us for two or three months; and the guests have learned that you have come down in a ship some way or another, and they are all up in arms, and they will all leave to-morrow, and the help would walk out to-morrow, if you took possession."

The plaintiff John P. Laughlin, however, insisted that he must take charge, and it was finally arranged that Harry Manson should tele-

graph his brother for instructions. Later, however, Harry Manson said:

"There is no use of your talking of this cablegram. I have the power of attorney in this hotel. I am his (the defendant's) representative, and I am going to run this hotel. It does not make any difference what my brother wires me. It would be detrimental to him, and he would lose money. You do not want my brother to lose money."

The plaintiff John P. Laughlin said that he did not, but that he did want the position. Apparently no cable was sent by Harry Manson to his brother. Harry Manson further said that, if his brother wanted to come down there and run the house, he could do it, but as long as he was there he was running the house; that he had a power of attorney from his brother to run the house, and was going to do it.

On one occasion the plaintiff John P. Laughlin went behind the desk in the hotel, took off his hat as though he was in possession, and stayed there until 1 or 2 o'clock in the morning. While he was there Harry Manson came in and told him "that the help was disrupted." The next morning, about 5:30 o'clock, he saw Harry Manson in the office, and the latter said that he had been out for two hours hunting up the help, and trying to get them to come back and go to work, and he added:

"I order you out of this office, and I do not want you to go into the kitchen; and, if you do, we will have no help here to-day, and the quests will all leave."

The plaintiff wrote several letters to the defendant, explaining the situation in detail and asking instructions. The defendant admitted that, although he had received these letters, he had made no answer to them. The plaintiff also consulted a New York attorney, who happened to be at the hotel at the time, and who, upon his return, wrote the defendant, asking him to appoint an interview, when he could see the defendant and explain the condition of affairs in Bermuda, with a view to straightening out the situation. The defendant, however, refused to see the attorney or have anything to do with him.

After remaining in Bermuda for two weeks, and being advised by Capt. Myers and instructed by Harry Manson to return to New York, the plaintiffs did so by the steamer sailing on March 20th. They later brought this action to recover damages for breach of the contract of employment, and recovered judgment, from which the defendant has taken this appeal.

It is urged that, as the letter of March 2, 1909, did not specify that the plaintiffs' employment was to be for a definite time, it must be taken to have been a hiring terminable at the will of either party. This would be so, if the plaintiffs' case rested on the letter alone. Martin v. Insurance Co., 148 N. Y. 117, 121, 42 N. E. 416. But both the plaintiffs testified that they were engaged for two months absolutely, at the salary named in the letter, with the understanding that their employment beyond that period would depend upon the success of their management.

The letter has no appearance of being a complete memorandum of the agreement between the parties. In view of the circumstances surrounding the parties, the distance of the place of performance, and

the nature of the employment itself, I think it is quite obviously incomplete on its face. It makes no provision regarding transportation to Bermuda, and none regarding the board or lodging of the plaintiffs, nor regarding the term of their employment in the distant place to which they were to go. Of course, it is conceivable that the parties might have made the bare agreement expressed in the defendant's letter, and have left their respective obligations thereunder to be fixed by the law. But, viewed in the light of the circumstances surrounding the parties at the time of its execution, the writing has not that appearance of completeness on its face which would justify the exclusion of parol evidence that further and consistent terms were included in the agreement between the parties. Eighmie v. Taylor, 98 N. Y. 288. I think, therefore, that there was no error in admitting the testimony of the plaintiffs that there was a definite hiring for two months, and the testimony so given was sufficient to sustain that conclusion.

It is further objected that the acts and declarations of Harry Manson were improperly admitted in evidence, and that the plaintiffs' case shows that they abandoned the performance of their agreement, and consequently cannot recover. Both plaintiffs testified, however, that in the course of their negotiations with the defendant he had told them that Harry Manson was acting as his representative in Bermuda; and there was also testimony that, although the defendant had told the plaintiffs more or less of the disorganized condition of the business and of his difficulties with his employés, he had assured them that there would be no trouble whatever in taking possession, and that Capt. Myers, to whom he gave them a letter, would install them. Upon this phase of the case I am satisfied that the plaintiffs were justified in dealing with Harry Manson and Capt. Myers, to the extent that they did, as the agents of the defendant, and that what these agents did and said on the occasions in question was properly admitted in evidence. The plaintiffs found Harry Manson in actual possession of the hotel and exercising control, and he refused to permit them to take charge of the place, and ordered them out. The plaintiffs appear to have acted in the highest good faith in the difficult situation in which they found themselves, and seem to have desired to avoid doing anything which would jeopardize the interests of their employer or disorganize his business. They communicated the situation to him in detail in several letters, and desired their attorney to call upon him and explain the condition of affairs and ask instructions. He ignored their letters and refused to see their representative, and now maintains that, as they were employed to manage and run the hotel and have admittedly failed to do so, they are out of court, because of nonperformance of their part of the agreement. But the trial court evidently believed that they had been employed to manage and conduct a hotel, of which they had been promised peaceful and undisputed possession, and that it was no part of their duty to take possession by force or arms, or against the protests of the agents whom the defendant had himself accredited to them. The evidence amply supports that view of the case, if, indeed it would have sustained any other.

120 N.Y.S.—8

We have examined the other points made by counsel for the appellant, but do not find any that require a disturbance of the judgment, which must accordingly be affirmed, with costs.

Judgment affirmed, with costs. All concur.